CITY OF SIKESTON, MISSOURI, Respondent, v. FRANK L. SISSON, Intervenor, Appellant, No. 43146—249 S. W. (2d) 345.

Court en Banc, May 27, 1952.

*Robert A. Dempster* for appellant.

*Dwight Crader* for respondent.

CONKLING, J.—This case is similar to and in the main presents the same and identical questions presented and ruled in case No. 43138, upon the matter of the petition of the City of Maryville, Missouri, for a pro forma decree to adjudicate the validity of Maryville's $450,000 issue of its revenue bonds for improvement of its waterworks and sewer system. Our opinion in the Maryville case (No. 43138) is filed concurrently herewith and what we there rule is largely determinative of the contentions raised in this case.

This case, which is also filed under Sections 108.310 to 108.350, RSMo. 1949, V.A.M.S., seeks pro forma decree declaring the validity of $5,000 principal amount of sewerage revenue bonds proposed to be issued by the respondent City of Sikeston, Missouri. Intervenor, Frank L. Sisson, (hereinafter called appellant) filed in this case his intervening petition praying that Sikeston's proposed revenue sewer bonds be held invalid. The

circuit court's decree declared the bonds to be valid and the intervenor appealed to this Court upon constitutional grounds duly raised in the trial court. The respondent City of Sikeston also proposed to issue its bonds under the authority of Sections 250.010 to 250.250, of the 1951 Supplement to RSMo. 1949, and V.A.M.S. (House Substitute for House Bill 45 of the 66th General Assembly) and which we designate as the 1951 Act. The questions presented are issues of law, the facts having been admitted. The case was submitted here without argument upon the briefs of the parties.

Respondent City of Sikeston did not elect to combine its municipally owned waterworks and sewerage system, but proceeding under the 1951 Act passed its ordinance on January 29, 1952, calling a special election to submit two proposals to its voters. The first proposal was that the city incur an indebtedness of $600,000 for the purpose of paying part of the cost of extending and improving Sikeston's sewerage system, and to evidence such indebtedness by the issuance of its bonds payable from taxes. This appeal does not [346] question the validity of those bonds which are a general indebtedness of the city. The second proposal was that respondent city issue and sell its Sewerage Revenue Bonds in the face amount of $450,000 to pay a part of the cost of extending and improving the city's existing sewerage system, said revenue bonds "to be payable solely from the revenues derived and to be derived by said City from the operation of said sewerage system, as authorized by Chapter 250, RSMo. 1949." At the election the proposition for the tax secured bonds was approved by a majority of more than two-thirds of the voters who voted at the election, and the proposition for the issuance and sale of the sewer revenue bonds was approved by a majority of more than four-sevenths of the voters who voted at the election.

The City Council passed the city's Ordinance No. 2041 establishing rates and charges for the services of its sewerage system. On February 19, 1952, the Council passed and the Mayor approved Sikeston's Ordinance No. 2044 authorizing the issuance and sale of only $5,000 principal amount of its theretofore authorized Revenue Sewerage Bonds to initiate the work of its improvements to its sewerage system.

Appellant-intervenor does not contend that the proceedings of Sikeston's City Council in calling, holding or declaring the result of the election were in any wise invalid. The area of appellant's contentions in this Court concern only the validity of the 1951 Act and the validity of two provisions of Sikeston's Ordinance No. 2044 which authorized the issuance and sale of the $5,000 of Revenue Sewerage Bonds.

Inasmuch as all the contentions made by appellant in this case as to the validity and constitutionality of the 1951 Act have been fully disposed of and ruled in the Maryville case (No. 43138) we need not further notice those contentions.

▌ Thus we are left with only appellant's two contentions as to the provisions of Sikeston's Ordinance No. 2044. Those two provisions are in that ordinance as paragraphs (c) and (k) of Section 12. Paragraph (c) of Section 12 is in these words:

"The City of Sikeston hereby covenants that the sewerage rates in force at the time of the delivery of the bonds authorized hereby, will not be reduced until such time as the amounts required by this ordinance to be deposited in the Sewerage Depreciation Account, the Sewerage Bond Reserve Account and the Sewerage Contingent Operation Account established by . . . Section 7 hereof shall in each case stand in the maximum amounts provided . . . nor while there shall be any default in the payment of the principal of or the interest on any bond authorized hereby as the same matures and accrues."

Paragraph (k) of Section 12 is in these words:

"The City of Sikeston will so long as any bonds or coupons are outstanding require that proper connections to the sewerage system of the City shall be made wherever sewerage service is available."

It is contended the two above quoted sections of the ordinance are beyond the authority granted by the 1951 Act and are illegal attempts to control the future action of the respondent city and its future City Councils. Appellant cites Vrana v. City of St. Louis, 164 Mo. 146, 64 S. W. 180 and City of Moberly v. Hogan, 317 Mo. 1225, 298 S. W. 237. In the Vrana case, an action to enjoin the collection of special tax bills against certain lots, it was held the city was without power to have given a valid prior exemption from either general taxes or special assessments as to such lots for it never had any such charter power, and that any contract which had so attempted such exemption was wholly void. In the City of Moberly case, supra, it was held that an agreement made by a city not to condemn property was wholly void for the right of eminent domain could not be contracted away. Those cases are without any application here. The city in the instant case proposes to do something it has the power to do. In the two above cases cited by appellant the city was undertaking to do something it had no power to do.

▌ Here the respondent city proposes to sell its sewerage revenue bonds which it agrees to pay with its sewerage revenues. By its ordinance contract No. 2044 it may lawfully and properly give the purchasers of those bonds certain assurances of its firm intention to conduct its fiscal affairs in a manner calculated to meet its bond payments. Sikeston had the legal right to covenant to set up certain accounts, deposit certain moneys therein and maintain its sewerage rates at a certain level until certain contingencies are met. Those covenants protect the bondholders and protect the citizens and sewerage users in Sikeston by the maintenance of the physical property

of such system. A well-maintained and efficient system is most advantageous to the city. Business like operation of the sewerage system backed by sound financial operation of the city's sewerage affairs will be beneficial to both parties to the contract. Covenants to attain them are properly included in the ordinance. And such is the clear intendment and requirement of the 1951 Act itself. Section 250.120 specifically provides that a city issuing such sewerage revenue bonds shall ''maintain rates . . . sufficient to pay the cost of maintenance and operation thereof, to pay the principal of and the interest on all revenue bonds,'' etc.

As to paragraph (c), the city's covenant to require owners of property within the city to make connections into the city's sewerage system wherever such sewerage service is available to the property of the owner within the city, the city clearly has such police power and may validly agree in the instant ordinance to exercise it. City of St. Louis v. Hoevel Real Estate and Building Co., Mo. Sup., 59 S. W. (2d) 617, City of St. Louis v. Nash, Mo. Sup., 260 S. W. 985, 986.

These above contentions of appellant as to the provisions of Sikeston's Ordinance No. 2044 are without merit. The remaining contentions of appellant having been considered and ruled in the companion Maryville case, the judgment of the Circuit Court of Scott County is affirmed. All concur.