Julius M. OSWALD, Appellant,

v.

CITY OF BLUE SPRINGS, Respondent.

No. 63697.

Supreme Court of Missouri,
En Banc.

July 6, 1982.

Robert K. McDonald, Blue Springs, Michael T. White, G. Edwin Proctor, Jr., Kansas City, William Ely, Blue Springs, for appellant.

Wm. Patrick Cronan, Fayette, Lewis C. Green, St. Louis, for amicus curiae.

MORGAN, Judge.

On June 21, 1981, the voters of the City of Blue Springs, Missouri, authorized the issuance of $19,100,000 principal aggregate amount combined waterworks and sewerage system revenue bonds to be issued for the purpose of extending and improving the City's waterworks and sewerage system by construction of a water treatment plant and water transmission lines. In support thereof, the Mayor and Board of Aldermen of the City had indicated that the aforementioned bonds would include a covenant in accordance with § 250.120.1, RSMo 1978[1] requiring the City to fix and maintain rates and make and collect charges for the use and services of said combined systems sufficient to pay the cost of maintenance, operation, principal and interest thereon, and to revise those rates from time to time so as to meet fully the requirements therein.

Appellant Julius Oswald, a citizen, resident, taxpayer and qualified voter of the City of Blue Springs, filed suit seeking a declaratory judgment that § 22 of Article X of the Missouri Constitution (one section of the recent constitutional revision popularly known as the Hancock Amendment) precluded the City from raising the rates charged to users pursuant to § 250.120.1. Further, appellant asked the trial court to enjoin the city from issuing bonds with the covenants mentioned. Otherwise, appellant did not question the validity of the bond election itself.

The facts were not in dispute, and the parties have carried forward the Stipulation

1. All subsequent citations to the Revised Statutes of Missouri are to RSMo 1978 unless otherwise noted.

of Facts submitted before the trial court. Each party filed a Motion for Summary Judgment and the trial court sustained that of the respondent City of Blue Springs. This Court has jurisdiction of the appeal by reason of Article V, § 3, of the Missouri Constitution (as amended 1976).

The crux of this appeal addresses the language of § 250.120.1, which provides that: "It shall be the mandatory duty of any city ... which shall issue revenue bonds pursuant to this chapter to fix and maintain rates and make and collect charges for the use and services of the system for the benefit of which such revenue bonds were issued, sufficient to pay the cost of maintenance and operation thereof, to pay the principal of and the interest on all revenue bonds ... issued or incurred by such city ... chargeable to the revenues of such system and to provide funds ample to meet all valid and reasonable requirements of the ordinance or resolution by which such revenue bonds have been issued. Such rates shall be from time to time revised so as to fully meet the requirements of this chapter...." This language forms the substance of the contested covenant to be included in the revenue bonds upon issuance.

Appellant argues that § 250.120.1 and the aforementioned covenant based thereon run afoul of § 22(a) of Article X, which states in pertinent part that: "Counties or other political subdivisions are hereby prohibited from levying any tax, license or fee not authorized ... or from increasing the current levy of an existing tax, license or fee ... without the approval of the required majority of the qualified voters..."; or, in the alternative, § 22(b), which specifically exempts "taxes imposed for the payment of principal and interest on bonds or other evidences of indebtedness or for the payment of assessments on contractual obligations in anticipation of which bonds are issued which were authorized prior to the effective date of this section." Appellant contends that the charges for water and sewerage use are encompassed within the limiting grasp of § 22(a) as a "tax, license or fee," or, if not, are beyond the exceptions provided for in § 22(b). However, paragraph 9 of appellant's petition, admitted to by respondent City, acknowledges that, "approval by the voters of Defendant [City of Blue Springs] of the above proposition [revenue bond proposal] authorized the Defendant [City] to raise water and sewer rates to pay the principal and interest on the said bonds." This severely limits the thrust of appellant's claim, as the Hancock Amendment arguably could be seen as restricting an increase for *any* purpose. As such, the issue before the Court is whether the City may raise water and sewerage rates to meet the cost of maintenance and operation *of the physical plant itself, in addition to its* conceded authority to increase such charges to pay the principal and interest on said bonds.

Viewed in this context, it becomes unnecessary to determine, for purposes of the case at bar, whether the rates charged for water and sewerage services constitute a tax, license or fee as contemplated within § 22(a) of the Hancock amendment, or whether revenue bonds are within the scope of § 22(b).

There are compelling reasons which dictate that an increase in rates for maintenance and operation of facilities is proper, assuming an increase for repayment of the principal and interest was not only authorized but dictated by the bond election.

Initially, the Court assumes that § 250.120 evidences a public policy of the State of Missouri which requires that a political body which issues revenue bonds conduct its business affairs in a sound financial manner. In *City of Sikeston v. Sisson*, 363 Mo. 104, 249 S.W.2d 345 (banc 1952), this Court discussed the purposes to be served by the mandatory provisions of § 250.120. It was noted that a city lawfully and properly could give the purchasers of bonds certain assurances of its firm intention to conduct its fiscal affairs in a manner calculated to meet its bond obligations; that covenants to set up certain accounts, deposit certain moneys therein and maintain sewerage rates at a certain level protect the bond

holders and citizens of the city by the maintenance of the physical property of the sewerage system; that a well-maintained and efficient system is most advantageous to the city; that business-like operation of the system, backed by sound financial operation will be beneficial to all parties involved; and that such was the clear intendment and requirement of § 250.120. 249 S.W.2d at 347. This public policy rings as true today as it did thirty years ago. Further, support can be found for the proposition that the city has *by implication* such necessary powers as are needed to carry into effect its granted constitutional authority to sell and issue revenue bonds. *State ex rel. Mitchell v. City of Sikeston*, 555 S.W.2d 281, 291 (Mo. banc 1977); *State ex rel. City of Fulton v. Smith*, 355 Mo. 27, 194 S.W.2d 302, 305 (banc 1946). Without covenant or assurance that the City would raise its water and sewerage rates to cover the expenses of operation and maintenance of the proposed facilities, few if any prospective bond purchasers would find these revenue bonds a suitable investment. We believe the City has the implied authority to assure the continued "upkeep" of the water and sewerage system "as one of the inducements to prospective [bond] holders, and thus favorably affect the value and marketability of the bonds...." *State ex rel. City of Fulton, supra*, 194 S.W.2d at 305, 306.

Next, given that approval of the sale of the revenue bonds authorized the City of Blue Springs to raise the water and sewerage rates to pay the principal and interest on the bonds, the question arises as to how else could the City pay for the cost of *maintenance* and *operation* of the physical facilities. In *Drey v. McNary*, 529 S.W.2d 403 (Mo. banc 1975), the Court was confronted with a *revenue* bond provision which would have obligated the citizens of St. Louis County to operate and maintain recreational facilities from *general* revenues. We held that such an undertaking would create a present indebtedness and obligate the county to levy taxes in subsequent years for its payment, and as such was violative of Art. VI, § 26(a)[2] of our Constitution. By analogy, to pay for the operation and maintenance of the water and sewerage physical plant would, by any method other than from the revenues received from user fees, be equally objectionable. That funds for maintenance and operation must be paid from the revenues created, rather than general revenues, is further supported by Art. VI, § 27, which declares that "the cost of operation and maintenance and the principal and interest of the bonds [are] to be payable solely from the revenues derived from the municipality ... from the operations of the utility...." Our holding that the charges may be raised to pay for maintenance and operation reaches the desired objective of harmonizing constitutional provisions.

Lastly, and most persuasively, logic demands the conclusion that the voters, by authorizing the Mayor and Board of Aldermen to increase rates to repay principal and interest, also authorized concomitant increases to pay for the costs of maintenance and operation. It cannot be argued seriously that a majority of the voters of the City approved the issuance of 19.1 million dollars of revenue bonds and authorized the City to increase the rates charged to users to repay the principal and interest on the bonds, yet did not authorize effectually an increase in those rates to keep the physical plant maintained and in working order. The promise to repay the bonded indebtedness would be illusory without the promise to keep the facilities running. We shall not impute such a futile and deceptive meaning upon a vote of the people of the people of Blue Springs.

In summary, given the posture of this case, in that the petitioner alleged and the respondent admitted that the City was au-

---

2. Article VI, § 26(a) reads as follows:

No county, city, incorporated town or village, school district or other political corporation or subdivision of the state shall become indebted in an amount exceeding in any year the income and revenue provided for such year plus any unencumbered balances from previous years, except as otherwise provided in this constitution.

thorized to raise the water and sewerage rates to repay the revenue bonds' principal and interest, we hold that increases to pay for maintenance and operation are not prohibited, but rather are mandated by sound public policy, logic, and reasonable implication. Nothing in the Hancock Amendment suggests otherwise.

The judgment of the trial court is affirmed.

All concur.