Dear Mr. Leffler:
This opinion is in response to your request as follows:
 Can new or increased hospital room rates and other hospital charges for a county hospital [established pursuant to Sections 205.160 to 205.379, RSMo] be imposed as necessary to satisfy the rate covenant contained in a proposed resolution of the County Court, to be adopted pursuant to Sections 205.160 to 205.379, RSMo. 1978, authorizing the issuance of revenue bonds for the purpose of acquiring, constructing, improving, extending, repairing, equipping and furnishing an addition to, and renovating existing areas of the county hospital, without obtaining voter approval of the new or increased rates or charges under Article X, § 22(a) of the Missouri Constitution?
The facts which you present to support your request indicate that the county court proposes to adopt a resolution authorizing the issuance of revenue bonds pursuant to Sections 205.160 to205.379, RSMo, which authorize a county court to issue and sell revenue bonds "for the purposes of providing funds for the acquisition, construction, equipment, improvement, extension and repair, and furnishing of hospital and related facilities, and of providing a site therefor, including offstreet parking space for motor vehicles. . . ." Section 205.161.1, RSMo Supp. 1982. No voter approval is required for issuance of such bonds. The bonds do not constitute an indebtedness of the State of Missouri, of the county or of the board of trustees of the county hospital, nor are they deemed an indebtedness within the meaning of any constitutional or statutory limitation upon the incurring of indebtedness. See Section 205.161, RSMo Supp. 1982.
Under Section 205.161, the bonds are payable both as to principal and interest solely from the net income and revenues arising from the operation of the hospital, after providing for the cost of operation and maintenance thereof, or from other funds made available from sources other than from proceeds of taxation. Bondholders who purchase the bonds are secured by the revenues of the hospital and may not look to the county, to county taxpayers or to the board of trustees for payment of the bonds.
To make these revenue bonds marketable, it is necessary that bond purchasers be assured that revenues of the bond-financed hospital facility will be sufficient to operate and maintain the facility and to pay the principal of and interest on the bonds. To this end, we understand that the proposed resolution of the county court authorizing and directing the issuance of these bonds, contains a covenant by the county and the county hospital board of trustees to raise rates as necessary to operate and maintain the hospital facility and to pay the principal and interest on the bonds. The proposed resolution will also be approved by the board of trustees of the county hospital which is vested with extensive powers relating to "the government of the hospital" by Sections 205.170 to 205.195, RSMo.
Article X, Section 22(a), Missouri Constitution, provides:
 Counties and other political subdivisions are hereby prohibited from levying any tax, license or fees, not authorized by law, charter or self-enforcing provisions of the constitution when this section is adopted or from increasing the current levy of an existing tax, license or fees, above that current levy
authorized by law or charter when this section is adopted without the approval of the required majority of the qualified voters of that county or other political subdivision voting thereon. . . . [Emphasis added.]
The primary issue to be determined in answering your question is whether hospital charges imposed for hospital and medical services constitute a "tax, license or fees" subject to Article X, Section 22(a).
The meaning of the phrase "tax, license or fees" was recently addressed by the Missouri Supreme Court in Roberts v. McNary,636 S.W.2d 332, 335 (Mo. banc 1982). The court stated:
 Article X, § 22(a) prohibits counties from levying any tax, license or fee not then authorized and from increasing any existing tax, license or fee. Webster's Third New International Dictionary (1965) defines these words as follows: (1) tax — "a pecuniary charge imposed by legislative or other public authority upon persons or property for public purposes: a forced contribution of wealth to meet the public needs of a government"; (2) license — "a right or permission granted in accordance with law by a competent authority to engage in some business or occupation, to do some act, or to engage in some transaction which but for such license would be unlawful"; (3) fee — "a fixed charge for admission; a charge fixed by law or by an institution for certain privileges or services; a charge fixed by law for services of a public officer."
 This Court has recently spoken on two of these words:
 "The term `tax' has been defined variously, but the appropriate definition for us is found in Leggett v. Missouri State Life Ins. Co., 342 S.W.2d 833, 875 (Mo. banc 1960) in which we stated: `Taxes are "proportional contributions imposed by the state upon individuals for the support of government and for all public need." * * * Taxes are not payments for a special privilege or a special service rendered * * * Fees or charges prescribed by law to be paid by certain individuals to public officers for services rendered in connection with a specific purpose
ordinarily are not taxes * * * unless the object of the requirement is to raise revenue to be paid into the general fund of the government to defray customary governmental expenditures * * * rather than compensation of public officers for particular services rendered. * * *'"
 Craig v. City of Macon, 543 S.W.2d 772, 774
(Mo. banc 1976).
The court concluded:
 Reading the words examined here for their ordinary and customary meanings, they present a sweeping list of the types of pecuniary charges the government makes. Quite simply, this exhibits an intent to control any such charges to the extent that the voters must approve any increase in them. [Emphasis added.]
Thus the Missouri Supreme Court in the Roberts case gave a very broad reading to the phrase "tax, license or fees." We lament that the court's holding in Roberts does not dispose of the question presented here. However, a careful reading of Roberts andCraig and a review of the types of charges that political subdivisions make suggests that some construction of the phrase "tax, license or fees" is necessary to determine which charges collected by a political subdivision are fees covered by Article X, Section 22(a) of the Missouri Constitution and which are not subject to the amendment's provisions.
It is clear that the touchstone of construction of Article X, Section 22(a) is to give the words of this provision the meaning intended by the voters, which in the absence of contrary evidence is their plain, natural and ordinary meaning. A construction of a constitutional provision should never be adopted which results in the requirement of useless or absurd acts, except where its terms are positive and unavoidable, State ex rel. Howell-ShapleighHardware Co. v. Cook, 77 S.W. 559 (Mo. Supp. 1904); cf. Oswald v.City of Blue Springs, 635 S.W.2d 332 (Mo. banc 1982). The question then is what the voters intended. Did the voters intend that every charge or monetary exaction collected by a county or other political subdivision be subject to their approval?
The language of Section 22(a) reflects the voter's intent to require voter approval of only certain charges collected by a political subdivision. If the voters intended to include all
charges collected by a county or political subdivision in the proscription of Section 22(a), the language of that provision easily could have been written to express this intent. Instead, the language of Section 22(a) singles out only certain charges, those constituting a "tax, license or fees," which must be submitted to a voter referendum.
Clearly, the policy behind Section 22(a) is not served by applying its limitations to all charges collected by a political subdivision. The Missouri Supreme Court in Roberts concluded that the purpose behind Section 22(a) was to limit growth in government — "to rein in increases in governmental revenue and expenditures." The voters were concerned with increases in monetary exactionsmandated by government, e.g., property taxes, business license fees, and fees fixed by law for services of a public officer. The voters intended to limit the power of a county or other political subdivision to increase those charges which the government requires
of its citizens — taxes, license and regulatory fees, and fees fixed by law for the services of public officers.
However, there are other charges which a county or political subdivision collects which are not mandated by law. These charges are those for goods and services which a citizen chooses to purchase. Such goods and services are often of a type offered both by private individuals and by government. Hospital services, including rooms, physician services, and medical goods and supplies fall into this latter category of charges.
A citizen needing health care often selects a public hospital operated by a county or other political subdivision to provide that care and contracts with the hospital for medical services and supplies. Here the relationship between the citizen and the county or political subdivision is a contractual one. The county does not levy the hospital charge. Rather the citizen requests certain goods and services from a county or political subdivision and agrees to pay a charge for those goods and services.
Section 22(a) prohibits counties and other political subdivisions from "levying" any new or increased "tax, license or fees" without voter approval. The use of the term "levy" in this provision supports the argument that the phrase "tax, license or fees" does not apply to charges collected by a county or other political subdivision pursuant to contract, but only to those charges which a political subdivision mandates or requires from its citizens. Clearly, hospital charges are not imposed by legal process, authority or power in the same sense as are taxes, licenses and fees. The hospital's right to payment of such charges is grounded in contract whereby a patient agrees to pay the charge and, if contested, upon proof that the charges are reasonable and for services necessary in connection with the treatment required or requested by the patient.
The use of the term "levy" in Section 22(a) reflects an intent that the phrase "tax, license or fees" applies to charges which are levied — those which constitute an unilateral imposition by government on its citizens. Clearly, some reasonable and well-articulated line of demarcation between fees levied by local government which are subject to Article X, Section 22(a) and charges which are collected as a result of a contractual relationship between government and individuals who contract with government is necessary. Until such time as the courts speak without ambiguity, the ongoing functioning of local governments is dependent on some direction as to the proper interpretation of the Hancock Amendment. Thus, we conclude that the language of Article X, Section 22(a) which prohibits a county or other political subdivision from "levying" any new or increased tax, license or fees does not apply to those charges which are not unilaterally imposed by government but which are, in fact, grounded in the contractual relationship between the government and its citizens. We caution, however, that this opinion is nothing more than our best interpretation of the law, which in this case is uncertain. Ultimate resolution of this issue is dependent upon the judiciary.
CONCLUSION
It is the opinion of this office that county hospital charges may be increased without voter approval. Such charges do not constitute taxes, licenses or fees within the meaning of ArticleX, Section 22(a) of the Missouri Constitution.
Very truly yours,
 JOHN ASHCROFT Attorney General