Dear Representative Miller:
This letter is in response to your request for an opinion of this office asking as follows:
 1. Does a public water district organized under Chapter 247 have to comply with the Hancock Amendment in increasing monthly water rates?
 2. Assuming a public water district has issued bonds, what, if any, limits are placed on the water district in raising monthly rates under the Hancock Amendment?
The answer to your first question, we believe, essentially depends upon whether or not the charges constitute taxes, licenses or fees within the meaning of Article X, Section 22(a) of the Missouri Constitution. If they are such, the case of Roberts v.McNary, 636 S.W.2d 332 (Mo. banc 1982) applies and increases in such charges must be approved by the voters under Hancock. If such charges are contractual in nature, it is doubtful that they would be subject to such a vote. See our Opinion No. 122-1982, copy enclosed. And, see Pace v. City of Hannibal, 680 S.W.2d 944
(Mo. banc) at l.c. 948, in which the Court stated that payments which were not imposed by statute, charter or ordinance, but represented voluntary payments by the city board of public works into the city's general revenue fund did not come within Hancock. We are of the view that there is a reasonable probability that a court would hold that water district rates are of a contractual nature and, therefore, that Hancock does not apply.
If the public water supply district has issued revenue bonds, the Missouri Supreme Court holding in the case of Oswald v. Cityof Blue Springs, 635 S.W.2d 332 (Mo. banc 1982) is authority for the raising of the rates, without voter approval, to pay principal and interest on revenue bonds issued for the purpose of construction of the facilities and to meet costs of maintenance and operation of a plant. In this respect, the Court stated at l.c. 334:
 Lastly, and most persuasively, logic demands the conclusion that the voters, by authorizing the Mayor and Board of Aldermen to increase rates to repay principal and interest, also authorized concomitant increases to pay for the costs of maintenance and operation. It cannot be argued seriously that a majority of the voters of the City approved the issuance of 19.1 million dollars of revenue bonds and authorized the City to increase the rates charged to users to repay the principal and interest on the bonds, yet did not authorize effectually an increase in those rates to keep the physical plant maintained and in working order. The promise to repay the bonded indebtedness would be illusory without the promise to keep the facilities running. . . .
We trust this answers your questions.
Yours very truly,
 WILLIAM L. WEBSTER Attorney General
Enclosure:
Opinion No. 122, Leffler, 1982