Donald L. MOATS and Penny D. Moats, Husband and Wife, and Samuel O. Threldkeld, Respondents,

v.

PULASKI COUNTY SEWER
DISTRICT NO. I,
Appellant.

No. 23024.

Missouri Court of Appeals,
Southern District,
Division Two.

June 21, 2000.

Motion for Rehearing and Transfer
Denied July 12, 2000.

Application for Transfer Denied
Aug. 29, 2000.

Ralph W. Muxlow, II, Richland, for appellant.

Michael G. Berry, Hendren and Andrae, L.L.C., Jefferson City, for respondents.

KERRY L. MONTGOMERY, Presiding Judge.

Pulaski County Sewer District No. I (Appellant) appeals from a judgment which declared invalid its regulations compelling Respondents to connect their residential wastewater systems to Appellant's sewer line and ordered Appellant to pay Respondents' damages and attorneys' fees. Appellant contends the trial court's declaration was erroneous because the regulations were authorized by statute and were a valid exercise of Appellant's police power. We affirm the judgment.

This matter came before the trial court on a stipulated record. Appellant is a common sewer district lawfully organized and operating pursuant to chapter 204.[1]

Appellant's board of trustees adopted "Pulaski County Sewer District No. I Sewer Use Rules and Regulations" to "regulate the use of public and private sewers and drains, private sewage disposal, the installation and connection of building sewers, and the discharge of waters and wastes into the public sewer system(s). . . ." Article II, § 4 of these regulations requires all owners of houses and buildings located within the sewer district to connect any toilet "facilities directly with the proper public sewer in accordance with the provisions of these rules and regulations, within ninety (90) days after date of official notice to do so, provided that said public sewer is within three hundred (300) feet of the owners' property line."

Respondents agree that they "owned a house, building, or other property located within the area serviced by [Appellant]." They also admit that "there was a public sewer operated by [Appellant] within 300 feet of [Respondents'] property lines, and that, although being requested to do so, they had not, within ninety (90) days after date of notice to do so, connected their property with the public sewer owned and operated by [Appellant]."

On March 18, 1996, Appellant wrote letters to Respondents notifying them that they owed fees "for services from the Sewer District." The letters also informed Respondents that Appellant would be filing liens on Respondents' properties if they did not pay the charges within fifteen days. On March 28, 1996, Respondents wrote Appellant denying that they owed fees because they did not use Appellant's services as they disposed their wastewater in lagoon treatment facilities on their properties. On April 11, 1996, Appellant filed liens on Respondents' properties.

During the dispute between Appellant and Respondents, the Missouri Department of Natural Resources (MDNR) became involved.[2] On April 23, 1996, the

---

1. Statutory references are to RSMo 1994, unless otherwise noted.

2. MDNR is the administrative body charged with enforcing the Missouri Clean Water Law.

Missouri Attorney General's Office, on behalf of MDNR, issued a letter ordering Respondents to connect their waste disposal systems to Appellant's sewer lines. The letter suggested that Respondents' wastewater systems did not comply with the Missouri Clean Water Law and informed Respondents that they could alleviate the alleged violations by connecting to Appellant's sewer lines.

Thereafter, Respondents filed suit against Appellant alleging that Appellant had slandered Respondents' title and effectively imposed a tax upon them in violation of the Missouri Constitution. Respondents sought a declaratory judgment holding that Appellant had no authority to compel Respondents to connect to Appellant's sewer lines. The Director of MDNR was also named as a defendant to the suit. Appellant filed a counter claim seeking the fees it claimed Respondents owed and a declaratory judgment affirming its authority to compel Respondents to connect to its sewer lines pursuant to its "Rules and Regulations."

Before the case went to trial, MDNR filed a motion to dismiss, or in the alternative, a motion for summary judgment. In its suggestions in support of this motion, MDNR asserted that it had jurisdiction over Respondents' wastewater treatment facilities under Missouri's Clean Water Law, and that the administrative process was still underway. The trial court issued an order of summary judgment dismissing MDNR from the case on the basis that the court lacked subject matter jurisdiction over the controversy because Respondents had not exhausted all administrative remedies.[3]

On January 28, 1999, a hearing was held on the matter. On April 2, 1999, the trial court entered a judgment finding in favor of Respondents. The trial court determined that no provision in its "Rules and Regulations" authorized Appellant to charge fees to a property owner who was unconnected to the sewage system. Therefore, the trial court concluded that Respondents did not owe user fees or connections fees to Appellant. The trial court found that the liens were recorded in an attempt to collect an invalid debt and contained materially false statements. It awarded Respondents damages for the period of time their land was unmarketable due to the liens.

The trial court went on to note that "the task of overseeing waste water discharge has been delegated by statute, to the Missouri Clean Water Commission [in § 644.026]." The court concluded that the Missouri General Assembly "has not delegated authority to [Appellant] to compel residents to connect waste water facilities to [Appellant's] lines." The court declared that, absent such authorization, Appellant's regulations requiring residents to connect to the sewer lines were invalid and could not be enforced. The trial court ordered Appellant to pay Respondents' attorneys' fees and costs.

The trial court filed an Amended Judgment on April 28, 1999, incorporating the original judgment and clarifying the monetary awards. This appeal followed.

■ Appellate review of this court-tried case is governed by the principles set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Clark v. Clark*, 919 S.W.2d 253, 254 (Mo.App.1996). We must affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32.

■ In its sole point on appeal, Appellant claims the trial court erred in declaring invalid Appellant's regulations compelling Respondents to connect their home waste systems to Appellant's sewer line. Appellant argues that such regulations

---

**3.** There is nothing in the record to suggest whether Respondents ultimately complied with MDNR's suggestion that they connect to Appellant's sewer lines.

"were remedial in nature and were authorized by Chapters 204 and 250 of the Revised Statutes of Missouri" and, therefore, were not preempted by the Missouri Clean Water Law. Appellant suggests that the regulations were a lawful exercise of its police power as a political subdivision of Missouri because there is a substantial relationship between requiring property owners to connect to public sewers and the preservation of public health, safety, and welfare.

Appellant maintains that "the State of Missouri has lawfully delegated the police power of the state over drainage and sewerage to both municipalities and sewer districts." Appellant asserts it has "specific authority" to require Respondents to connect to its sewer system pursuant to §§ 204.320, 204.330, and 250.240.

 "In construing statutes, our primary focus is to ascertain the intent by giving the plain and ordinary meaning to the language employed by the legislature." *State ex rel. Whiteco Indus., Inc., v. Bowers*, 965 S.W.2d 203, 207 (Mo.App.1998). This Court " 'must construe the statute in light of the purposes the legislature intended to accomplish and the evils it intended to cure.' " *Id.* (quoting *Wilson v. Director of Revenue*, 873 S.W.2d 328, 329 (Mo.App.1994)).

In enacting chapter 204, the Missouri legislature created sewer districts to control wastewater and fight water pollution. The legislature delegated regulatory powers to these districts in order to meet these goals. Enacted in 1951, § 204.330.6 was a broad grant of powers to sewer districts:

The board of trustees shall have all of the powers necessary and convenient to provide for the operation, maintenance, administration, and regulation, including the adoption of rules and regulations, of any individual home sewage or business treatment systems within the jurisdiction of the sewage district.

This delegation of powers was reinforced by the 1967 passage of § 204.320, which enables the board of trustees of a sewage district to "pass all necessary rules and regulations for the proper management and conduct of the business of the ... district, and for carrying into effect the objects for which the district is formed."

The sewer districts' powers were further enhanced by the passage of § 250.240 in 1969. Section 250.240 provides:

It is the purpose of this chapter to enable ... sewer districts to protect the public health and welfare by preventing or abating the pollution of water and creating means for supplying wholesome water, and to these ends every such ... sewer district shall have the power to do all things necessary or convenient to carry out such purpose, in addition to the powers conferred in this chapter. This chapter is remedial in nature and the powers hereby granted shall be liberally construed.

Appellant asserts that these statutes delegated the "sovereign powers of the state" to sewer districts and empowered it to compel Respondents to connect to its sewer lines. In support of this contention, Appellant also cites a series of Missouri cases requiring landowners to hook their waste facilities up to sewer systems, the most recent of which was decided in 1955.[4]

There is no question that at the time the legislature enacted these statutes it granted sewer districts broad powers in order to achieve the goals of preventing pollution and maintaining a clean water supply. Since that time, however, the legislature has enacted the Missouri Clean Water Law in chapter 644 and delegated authority to prevent and control water pollution to the Clean Water Commission of the

4. *See State v. Metropolitan St. Louis Sewer Dist.*, 365 Mo. 1, 275 S.W.2d 225 (Mo. banc 1955); *City of Sikeston v. Sisson*, 363 Mo. 104, 249 S.W.2d 345 (Mo. banc 1952); *City of St. Louis v. Hoevel Real Estate & Building Co.*, 59 S.W.2d 617 (Mo.1933); and *City of St. Louis v. Nash*, 260 S.W. 985 (Mo.1924).

State of Missouri (Commission). The question becomes whether Appellant's regulation requiring all property owners to connect to its sewer lines is preempted by Commission's adoption of rules and regulations governing wastewater facilities.

■■■ As a general rule, a "chronologically later statute, which functions in a particular way will prevail over an earlier statute of a more general nature, and the latter statute will be regarded as an exception to or qualification of the earlier general statute." *Lett v. City of St. Louis,* 948 S.W.2d 614, 619 (Mo.App.1996) (quoting *Goldberg v. State Tax Comm'n,* 639 S.W.2d 796, 805 (Mo. banc 1982) (citations omitted)). Furthermore, "[w]here one statute deals with a particular subject in a general way, and a second statute treats a part of the same subject in a more detailed way, the more general should give way to the more specific." *Casey v. State Board of Registration for the Healing Arts,* 830 S.W.2d 478, 481 (Mo.App.1992).

Chapter 644 created the Missouri Clean Water Law. Commission was created by § 644.021, which was adopted in 1972. Section 644.026, adopted in 1972 and last amended in 1995, sets forth specific duties and powers of Commission.[5] Both the dates of enactment and the detail with which the statute sets forth Commission's powers suggests the legislature's intention that the Missouri Clean Water Law takes precedent over the earlier grant of powers to Appellant.

■■■ Section 644.026.1(1) provides for Commission to "[e]xercise general supervision of the administration and enforcement" of the Missouri Clean Water law. Commission is also charged with developing "comprehensive plans and programs for the prevention, control and abatement of new or existing pollution of the waters of the state[.]" § 644.026.1(2). The clear purpose of the law is to ensure the contin-

ued purity of the State's waters, with the powers to carry out this goal vested in Commission.

With this in mind, the statute grants Commission the power to promulgate rules and regulations to implement the purposes of the Missouri Clean Water Law. §§ 644.026.1(8) and (16). Commission may "[i]ssue, modify or revoke orders prohibiting or abating discharges of water contaminants into the waters of the state or adopting other remedial measures to prevent, control or abate pollution." § 644.026.1(9). Additionally, Commission may "[e]xercise all incidental powers necessary to carry out the purposes of [the Missouri Clean Water Law]." § 644.026.1(15).

Pursuant to the grant of powers in § 644.026, Commission has promulgated regulations that are codified in 10 CSR chapter 6. Appellant claims the most pertinent of these regulations is 10 CSR 20–6.010, which sets forth the requirements for obtaining construction and operating permits for wastewater facilities. Appellant correctly notes that 10 CSR 20.6.010(1)(B)5 exempts single family residences from the permit regulations adopted by Commission. Appellant concedes there is an exception to this exemption in 10 CSR 20–6.010(1)(C) which states:

> Nothing shall prevent the department [6] from taking action, including the requirement for issuance of any permits under the Missouri Clean Water Law and regulations, if any of the activities exempted under subsection (1)(B) should cause pollution of waters of the state or otherwise violate the Missouri Clean Water Law or these regulations.

Based upon this subsection, Appellant concludes the Missouri Clean Water Law applies to a single family residence only after it has been proven that the residen-

---

**5.** All statutory references to § 644.026 are to RSMo Cum.Supp. (1996) unless otherwise indicated.

**6.** It should be noted that "the department" refers to MDNR.

tial wastewater system is causing pollution. Appellant does not challenge Commission's ultimate authority over wastewater management issues. Instead, Appellant claims its requirement that property owners connect to its sewer lines regardless of whether the owners are causing pollution "is an area of public sewer connection requirements not covered by the Clean Water Act, and its regulations." Appellant reasons that the Missouri Clean Water Law did not preempt its authority in this area and it may, therefore, regulate every single family residence within its service area until such time as MDNR determines a wastewater system is causing pollution. We do not agree with this reasoning.

■■■ Preemption of a local law by a state law may occur where the local law is in direct conflict with a state law. *Borron v. Farrenkopf,* 5 S.W.3d 618, 622 (Mo.App. 1999). When this occurs, the local law is invalid because it is contrary to state law. *Id.* "If a local law either prohibits what state law allows, or allows what state law prohibits, then a local law is in conflict with the state law and, therefore preempted." *Id.*

■■■ Appellant correctly notes that while preemption forbids direct conflict between state and local law, it does not forbid extra regulations by the locality. "An ordinance may supplement or enlarge upon the provisions of a state statute by requiring more than what is required in the statute." *Combined Communications Corp. v. Bridgeton,* 939 S.W.2d 460, 463 (Mo.App.1996). "However, if the expressed or implied provisions of each are inconsistent and irreconcilable then the ordinance is voided or annulled by the state statute." *Id.* "To determine if a conflict exists, the test is whether the ordinance prohibits that which the statute permits or

permits that which the statute prohibits." *Id.*

Although Appellant asserts that there is no conflict between its regulation and the Missouri Clean Water Law, it is apparent that such a conflict does exist. Under 10 CSR 20–6.010(1)(C), MDNR may take action where a single family residence's wastewater system violates the Missouri Clean Water Law. While MDNR may determine the appropriate action is requiring property owners to connect their system to district sewer lines, as in this case, this determination could instead include requiring a maintenance permit for a the continued operation of the existing residential wastewater system. 10 CSR 20–6.010(1)(C).[7] Nothing in the regulation annuls the permit once the residential wastewater system no longer pollutes. On the contrary, the purpose of such a permit is to ensure the system is in compliance with the Missouri Clean Water Law and remains so.

The potential for conflict is readily apparent where a residential wastewater system is operating under a valid Missouri Clean Water Law permit and Appellant extends its sewer line within 300 feet of that residence. In that situation, the homeowner should not face conflicting requirements from two different masters.

Appellant's regulation is an absolute requirement that all property owners within 300 feet of its sewer lines connect to its system. Appellant's regulation provides no exemptions, even for a system that has a valid permit issued pursuant to the Missouri Clean Water Law. Therefore, by requiring a homeowner to connect to its sewer lines, Appellant may completely eliminate an individual home sewage system that is in compliance with the requirements of the Missouri Clean Water Law.

7. The general permit provisions under 10 CSR 20–6.010(1)(A) reads, in pertinent part, as follows:

All persons who build, erect, alter, replace, operate, use or maintain existing point sources ... or wastewater treatment facilities shall apply to the department for the permits required by the Missouri Clean Water Law and these regulations. The department issues these permits in order to enforce the Missouri Clean Water Law....

This amounts to an absolute prohibition of that which state law permits. Appellant's regulation that all wastewater facilities in its service area connect to its sewer lines directly conflicts with Commission's authority and is therefore invalid.

We cannot say the trial court erred in finding that Appellant's regulation requiring Respondents to connect their wastewater systems to its sewer lines is preempted by the Missouri Clean Water Law. Point denied.

The judgment of the trial court is affirmed.

GARRISON, C.J., and BARNEY, J. concur.