Wilhelmina D. ROBERTS, Respondent,

v.

Gene McNARY, St. Louis County
Executive, et al., Appellants.

No. 63798.

Supreme Court of Missouri,
En Banc.

Aug. 2, 1982.
Rehearing Denied Aug. 23, 1982.

James H. White, Assoc. County Counselor, Katherine L. Gayer, Asst. County Counselor, Clayton, for appellants.

Lewis C. Green, St. Louis, for respondent.

Alex Bartlett, Jefferson City, Aaron A. Wilson, City Atty., Geo. L. DeBitetto, Asst. City Atty., Kansas City, Howard C. Wright, Jr., City Atty., Springfield, Russell D. Jacobson, Assoc. County Counselor, Kansas City, Joseph R. Niemann, City Counselor, Robert H. Dierker, Jr., Edward J. Hanlon, Asst. City Counselors, St. Louis, William Patrick Cronan, Fayette, for amici curiae.

DONNELLY, Chief Justice.

On November 4, 1980, Missouri voters adopted an amendment to their State Constitution—Article X, §§ 16 through 24, inclusive (the Hancock Amendment). Section 22, which is pertinent here, provides in part as follows:

"§ 22. [Taxation by political subdivisions, limitations—repayment of bonds]

Section 22. (a) Counties * * * are hereby prohibited from levying any tax, license or fees, not authorized by law, charter or self-enforcing provisions of the constitution when this section is adopted or from increasing the current levy of an existing tax, license or fees, above that current levy authorized by law or charter when this section is adopted without the approval of the required majority of the qualified voters of that county or other political subdivision voting thereon. * *."

In its proposed budget for the 1982 calendar year, St. Louis County included increases in certain fees charged for numerous county services, such as parks and building inspection. This budget, with the increased fees, was adopted by the St. Louis County Council in January 1982. On January 22, 1982, respondent Wilhelmina Roberts, a resident and taxpayer of St. Louis County, filed a declaratory judgment action seeking to prevent St. Louis County from implementing the fee increases. She alleged that the county ordinances which increased the fees violated Mo.Const. Art. X, § 22, because the increases were not submitted to the qualified voters of the county for approval. Respondent requested that the ordinances be declared unconstitutional and that an injunction be issued against their enforcement. After trial, the court granted the relief requested, and Gene McNary, County Executive, and St. Louis County have filed this appeal. This Court has jurisdiction because the validity of a provision of the State Constitution is involved. Mo.Const. Art. V, § 3.

The first point raised on appeal concerns whether the charges which St. Louis County seeks to raise, or establish, fall within the phrase "tax, license or fees" within Art. X, § 22(a). Appellants contend that the purpose of the Hancock Amendment—limitation of taxation—requires that "tax, license or fees" be read to include only those levies which seek to generate general revenue. Therefore, they argue that "user" fees or "regulatory" fees (which, it is agreed, accu-

rately describe the fees in this case) are not governed by Art. X, § 22(a) because they support only the service for which they are collected. On the other hand, respondent's position is that a plain reading of Art. X, § 22(a) would include all licenses or fees, regardless of the use to which the funds generated are put.

Appellants have two pillars of support for their interpretation of Art. X, § 22(a). First, the testimony of Melton D. Hancock (after whom the Amendment was named) was that the words "license or fees" were added to "tax" in § 22(a) to prevent the government from levying higher licenses and fees in order to generate general revenue to compensate for the funds lost through the tax-limiting aspect of the Amendment. The second prong of appellants' argument is that the Hancock Amendment as a whole, as shown in § 16, limits only local taxing and state taxing and spending, and therefore does not extend to "user" or "regulatory" fees because by definition they are not considered taxes.

Rules employed in construction of constitutional provisions are the same as those employed in construction of statutes, but the former are to be given a broader construction due to their more permanent character. *Boone County Court v. State of Missouri*, 631 S.W.2d 321, 325 (Mo. banc 1982); *State at the Information of Martin v. City of Independence*, 518 S.W.2d 63, 65 (Mo.1974). Crucial words must be viewed in context and it must be assumed that words used were not intended to be meaningless. *State v. Shell*, 571 S.W.2d 798, 800 (Mo.App.1978). This Court has recognized that in construction of constitutional provisions, it should undertake to ascribe to words the meaning which the people understood them to have when they adopted the provision. *State ex inf. of Danforth v. Cason*, 507 S.W.2d 405, 408 (Mo. banc 1973). "The framers of the Constitution and the people who adopted it 'must be understood to have employed words in their natural sense, and to have intended what they have said.' This is but saying that no forced or unnatural construction is to be put upon their language." *State ex inf. Danforth v. Cason*, 507 S.W.2d at 409; *State ex rel. Heimberger v. Board of Curators of University of Missouri*, 268 Mo. 598, 188 S.W. 128 (banc 1916). The meaning of the words in the provision, as conveyed to the voters, is presumed to be their natural and ordinary meaning. *State ex inf. Danforth v. Cason*, 507 S.W.2d at 409. The ordinary, and commonly understood meaning is derived from the dictionary. *Boone County Court v. State of Missouri*, 631 S.W.2d at 324. Moreover, the grammatical order and selection of the associated words as arranged by the drafters is also indicative of the natural significance of the words employed. *Id.* Of course, this Court must give due regard to the primary objectives of the provision under scrutiny as viewed in harmony with all related provisions, considered as a whole. *State at the Information of Martin v. City of Independence*, 518 S.W.2d at 66.

Article X, § 22(a) prohibits counties from levying any tax, license or fee not then authorized and from increasing any existing tax, license or fee. Webster's Third New International Dictionary (1965) defines these words as follows: (1) tax—"a pecuniary charge imposed by legislative or other public authority upon persons or property for public purposes: a forced contribution of wealth to meet the public needs of a government"; (2) license—"a right or permission granted in accordance with law by a competent authority to engage in some business or occupation, to do some act, or to engage in some transaction which but for such license would be unlawful"; (3) fee—"a fixed charge for admission; a charge fixed by law or by an institution for certain privileges or services; a charge fixed by law for services of a public officer."

This Court has recently spoken on two of these words:

"The term 'tax' has been defined variously, but the appropriate definition for us is found in *Leggett v. Missouri State Life Ins. Co.*, 342 S.W.2d 833, 875 (Mo. banc 1960) in which we stated: 'Taxes are "proportional contributions imposed by the state upon individuals for the sup-

port of government and for all public needs." * * * Taxes are not payments for a special privilege or a special service rendered * * * Fees or charges prescribed by law to be paid by certain individuals to public officers for services rendered in connection with a specific purpose ordinarily are not taxes * * * unless the object of the requirement is to raise revenue to be paid into the general fund of the government to defray customary governmental expenditures * * * rather than compensation of public officers for particular services rendered * * *.' "

*Craig v. City of Macon*, 543 S.W.2d 772, 774 (Mo. banc 1976).

■ Reading the words examined here for their ordinary and customary meanings, they present a sweeping list of the types of pecuniary charges a government makes. Quite simply, this exhibits an intent to control any such charges to the extent that the voters must approve any increase in them. Therefore, the charges which appellants seek to enact by county ordinance are governed by Art. X, § 22(a).

■ This is consistent with the objectives of the Hancock Amendment as clearly understood by voters—to rein in increases in governmental revenue and expenditures. The official ballot title for the Hancock Amendment specifically informed voters that the amendment "prohibits local tax or fee increases without popular vote." "[T]he Amendment * * * is popularly described as 'the taxing and spending lid' amendment, words which also reflect its central purpose." *Buchanan v. Kirkpatrick*, 615 S.W.2d 6, 13 (Mo. banc 1981). Limiting the ability of counties to increase licenses or fees is certainly in harmony with the objectives of the Amendment as a whole. The judgment of the trial court on this issue must be sustained. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ Appellants' next point deals with the relationship between the charter of St. Louis County and Mo.Const. Art. X, § 22(a). On November 6, 1979, St. Louis County voters amended their county charter to authorize the County Council to set all charges by reposing legislative power in it in § 2.180 of the St. Louis County Charter. Against this factual backdrop, appellants argue (1) that the fee increases fall within the "authorized" exception in Art. X, § 22(a), and (2) that the fees are, in fact, approved by the voters because they voted for the amendment to the St. Louis County charter prior to adoption of the Hancock Amendment.

With respect to the first aspect of this issue, appellants contend that if a statute or charter, extant prior to adoption of the Hancock Amendment, *authorizes* a county to levy a *fee* (but no specific fee was set or levied), then after Hancock the county can impose a fee under that authority without submitting it to the voters for approval. Appellants state that the fees involved do not have a set rate or amount except that they must not "cause the receipts to substantially exceed the associated costs." They conclude that the trial court erred because the evidence established that the costs of the services exceeded the revenues obtained from the charges.

Respondent counters with a view that where the county has authority to levy a fee but no specific amount has as yet been set, the "current levy" should be viewed as being zero. Thus, the establishment of a specific fee here would require voter approval just as in any other fee increase.

Utilizing the rules of construction earlier stated and considering the facts of this case, appellants' position is without support. The specific language in Art. X, § 22(a) involved in this issue is as follows:

"Counties * * * are hereby *prohibited from levying any tax, license or fees, not authorized by law, charter or self-enforcing provisions of the constitution* when this section is adopted *or from increasing the current levy of an existing tax, license or fees* above that current levy authorized by law or charter when this section is adopted without the approval of the required majority of the qualified voters of that county * * *." (emphasis added)

The first phrase of § 22(a) means that it does not affect any license or fee specific in amount which, although authorized at the time of the adoption of the Hancock Amendment, had not yet actually been imposed. The second phrase states that any license or fee existing [i.e., actually imposed] at the time the Hancock Amendment was adopted could not be increased without complying with § 22(a). Therefore, appellants' assertion that a county can impose a license or fee under an enabling authority which sets no specific dollar amount or rate without complying with Art. X, § 22(a) must fail. The resolution of this issue also denies appellants' argument that the voters' adoption of the 1979 amendment to the St. Louis County Charter satisfies the "voter approval" requirement in Art. X, § 22(a).

■ Next, appellants assert that the construction of Art. X, § 22(a) so that it affects "user" fees renders the Hancock Amendment void as duplicitous in violation of Mo.Const. Art. XII, § 2(b) because such a construction "injects [into the Amendment] subjects not germane to taxation."

The constitutional provision involved here is Article XII, § 2(b), which provides in part as follows:

"No such proposed amendment shall contain * * * more than one subject *and matters properly connected therewith.*" (emphasis added)

This Court has previously examined the Hancock Amendment and determined that its primary purpose is to limit taxes and governmental expenditures and that such a purpose is not violative of Article XII, § 2(b). *Buchanan v. Kirkpatrick,* 615 S.W.2d 6, 13–14 (Mo. banc 1981). There is no basis for finding that the specific limit in Art. X, § 22(a) on the power of a county to impose licenses or fees is not "properly connected" to that purpose.

■ Appellants further argue that the trial court's construction of Mo.Const. Art. X, § 22(a) violates Mo.Const. Art. VI, §§ 8 and 15, because each county will have different power to levy fees as a result of what authority they had at the time the Hancock Amendment was adopted. Sec-

tions 8 and 15 of Article VI of the Missouri Constitution are not applicable to this issue. They require uniform laws with respect to the classification, powers, and restrictions of counties (§ 8) and cities and towns (§ 15), so that those in the same class are not treated differently. *See, e.g., Gramex Corporation v. Von Romer,* 603 S.W.2d 521 (Mo. banc 1980). The trial court's construction of Article X, § 22(a) in this case has in no way resulted in a violation of Mo.Const. Art. VI, §§ 8 and 15.

Appellants charge that the trial court erred in declaring void county ordinances imposing fees for the parks and recreation department (other than those in St. Louis County Ordinance 7762) because they violated provisions of the Charter of St. Louis County. There is no need to reach this issue because, regardless of *its* resolution, the trial court's judgment would still be correct in enjoining the enforcement of those fees. *See Mattingly v. Bruckerhoff,* 603 S.W.2d 11, 13[2] (Mo.App.1980). They, like their kindred herein, were not validated pursuant to Mo.Const. Art. X, § 22(a).

■ Appellants' next assertion is that respondent lacked standing to bring this declaratory judgment suit in the first instance. They claim that respondent has failed to show that she has a legally protectible interest or that she has, in fact, sustained damage as a result of the fee increases.

Section 23 of Article X, provides in part as follows:

"Notwithstanding other provisions of this constitution or other law, any taxpayer of the state, county or other political subdivision shall have standing to bring suit in a circuit court of proper venue * * * to enforce the provisions of sections 16 through 22, inclusive, of this article * * *."

This Court has read this section for its plain meaning as follows: "Provision is made in section 23 of the amendment to give taxpayers * * * standing to enforce the amendment in the courts." *Buchanan v. Kirkpatrick,* 615 S.W.2d at 13. The asser-

tion is without merit. Article X, § 23 was designed to insure that taxpayer-plaintiffs such as respondent shall have their day in court to enforce the provisions of the Hancock Amendment.

Finally, appellants contend that the trial court abused its discretion in awarding respondent $1,156.48 in costs and $9,000 for attorneys' fees in conducting this litigation. The record contains respondents' attorney's testimony that he ordinarily charges $120 per hour; that he believed that his rate ought to be doubled due to the expedited treatment he had to give to this case; that he spent 74½ hours on the case, 18 of which were devoted to an amicus curiae brief filed in *Oswald v. City of Blue Springs,* 635 S.W.2d 332 (Mo. banc 1982); that counsel believed that filing the brief in *Oswald* was necessary to make sure that the issues raised in the instant case were not decided unfavorably to respondent. Appellants object to the trial court's having stated on record that it planned to take into consideration the time spent on the amicus brief respondent filed in *Oswald.* Respondent testified that her out-of-pocket expenditures were $1,156.48.

Section 23 of the Hancock Amendment provides that "if the suit [brought to enforce sections 16 through 22] is sustained, [the plaintiff] shall receive from the applicable unit of government his costs, including reasonable attorneys' fees incurred in maintaining such suit."

■ The trial court is considered to be an expert on the question of attorneys' fees. The court that tries a case and is acquainted with all the issues involved may fix the amount of attorneys' fees without the aid of evidence. *Nelson v. Hotchkiss,* 601 S.W.2d 14, 21 (Mo. banc 1980). The setting of attorneys' fees is within the sound discretion of the trial court and should not be reversed unless the award is arbitrarily arrived at or is so unreasonable as to indicate indifference and lack of proper judicial consideration. *Id.* In the absence of evidence to the contrary, it is presumed that the allowance of attorneys' fees was for compensable services and that no

allowance was made for non-compensable services. *Id.* Thus, the burden was on appellants to affirmatively establish that the compensation allowed was a clear or manifest abuse of sound judicial discretion. *Id.; Sebree v. Rosen,* 393 S.W.2d 590, 599 (Mo.1965). Moreover, in the absence of contrary evidence, the trial court is presumed to know the character of the services rendered in duration, zeal and ability, and to know the value of them according to custom, place, and circumstance. *Nelson v. Hotchkiss,* 601 S.W.2d at 21.

■ On the record before us, we cannot say that the trial court abused its discretion in fixing the fee for respondent's attorney. Moreover, the language in § 23 referring to costs makes clear that a successful taxpayer-plaintiff shall be reimbursed for all out-of-pocket expenses in pursuing the litigation. In so holding, we do not change the ordinary rules with respect to recovery of costs. *See Leslie v. Carter,* 268 Mo. 420, 187 S.W. 1196 (1916); *see also Troupe v. Board of Education of City of St. Louis,* 582 S.W.2d 356, 358 (Mo.App.1979). The trial court's awards must be sustained.

The judgment is affirmed.

All concur.