**STATE ex rel. PUBLIC DEFENDER COMMISSION, Relator-Appellant,**

v.

**COUNTY COURT OF GREENE COUN-TY, et al., Defendants-Respondents.**

No. 65388.

Supreme Court of Missouri, En Banc.

March 20, 1984.

Mark A. Brittingham, Alan Kohn, St. Louis, for relator-appellant.

Theodore L. Johnson III, John W. Housley, Springfield, for defendants-respondents.

GUNN, Judge.

Relator appeals from the trial court's judgment denying its requested writ of mandamus. Relator, the Missouri Public Defender Commission, filed its petition in mandamus seeking to compel respondents, the County Court of Greene County, to provide office space and utility services for the Public Defender for the Thirty-first Judicial Circuit. Relator premised its case on § 600.040.1, RSMo Cum.Supp.1983, which requires the appropriate city or county to "provide office space and utility services ... for the circuit or regional public defender and his personnel."[1] The trial court refused to issue the writ on the theory that the obligation placed on Greene County by reason of § 600.040.1 did not exist prior to the adoption of the Mo. Const. art. X, § 21, which mandates state funding for new local services required by a state agency. Hence, the trial court concluded, the obligation could not be enforced under this provision of the Constitution without a corresponding state appropriation and disbursement.

It is apparent on appeal that the county's responsibility to maintain the public defender's office was extant prior to article X, § 21 as a result of the unconstitutional nature of prior special legislation pertaining to public defenders which purported to exempt Greene County from its operation. Section 600.010, RSMo 1978 (added Laws 1976, p. 783; repealed Laws 1982, p. 696).

The constitutional challenge places this matter before this Court. Mo. Const. art. V, § 3. We reverse and remand the case to the trial court with directions that the writ of mandamus issue.

---

1. Section 600.040.1, RSMo Cum.Supp.1983, provides:

    The city or county shall provide office space and utility services, other than telephone service, for the circuit or regional public defender and his personnel. If there is more than one county in a circuit or region, each county shall contribute, on the basis of population, its pro rata share of the costs of office space and utility services, other than telephone service. The state shall pay, within the limits of the appropriation therefor, all other expenses and costs of the state public defender system authorized under this chapter.

In 1976, the General Assembly enacted § 600.010 (§ 600.010, RSMo 1978) which provided, as here pertinent, that a public defender be appointed in every judicial circuit of the state having a population of not less than 75,000. But the Thirty-first Judicial Circuit (consisting solely of Greene County) was specifically exempted from the provisions of the law.

Relator argues that the special exemption violates the constitutional prohibition against special legislation. Mo. Const. art. III, § 40. And, as manifestly seen, it does indeed.

The background of the Public Defender Law follows. It was first enacted in 1972. Section 600.010, *et seq.*, RSMo Cum.Supp. 1975 (added Laws 1972, p. 1035). That version provided for the appointment of a public defender "[i]n each judicial circuit of the state which has a population of not less than 75,000 nor more than 150,000, or has a population of more than 200,000." Section 600.010, RSMo Cum.Supp.1975.[2] The Thirty-first Judicial Circuit was excluded from the operation of this section, in that Greene County, its only constituent, had a population of less than 200,000 but more than 150,000. 1970 Census of Population, pt. 27, p. 27 (*see* § 1.100, RSMo 1978, authorizing the use of the decennial census).

In 1976, § 600.010 was amended to make the exclusion of the Thirty-first Circuit explicit. Section 600.010, RSMo 1978 (amended Laws 1976, p. 783).[3] As then amended, public defenders were appointed in each circuit having a population of not less than 75,000, except for the Thirty-first Circuit. *Id.* From its inception the Public Defender Law has required those counties within judicial circuits for which a public defender is appointed to provide office space and utility service. Section 600.040, RSMo Cum.Supp. 1983; *see* Laws 1972, p. 1037. Greene

County, being a part of the Thirty-first Judicial Circuit, was, of course, legislatively excluded from this requirement.

Effective April 1, 1982, the Public Defender Law was substantially revised. Section 600.011, *et seq.*, RSMo Cum.Supp. 1983. This revision created a new state agency, the Public Defender Commission, with the power to establish local or regional public defender offices. *Id.*, § 600.-021(4). Shortly after its creation, the Commission appointed a public defender for the Thirty-first Judicial Circuit and requested Greene County to provide support for the office pursuant to § 600.040. The request was refused on the basis of the Mo. Const. art. X, § 21, and this action followed.

Mo. Const. art. X, § 21 provides:

The state is hereby prohibited from reducing the state financed proportion of the costs of any existing activity or service required of counties and other political subdivisions. A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the general assembly or any state agency of counties or other political subdivisions, unless a state appropriation is made and disbursed to pay the county or other political subdivision for any increased costs.

This provision of the Constitution, along with certain other sections, was adopted November 4, 1980 and became effective thirty days after that date. *Id.;* Mo. Const. art. XII, § 2(b).

The issue presented to this Court is whether Greene County's financial responsibility under § 600.040, sought to be enforced by the Public Defender Commission, is a "new activity or service or an increase in the level of any activity or service beyond that required by existing law," within

---

**2.** The statute also provided for the appointment of public defenders in the judicial circuits containing the state capital, the Fordland Honor Camp and the Missouri Training Center for Men. *Id.*

**3.** This enactment also mandated the appointment of public defenders in the following judi-

cial circuits: the Sixth (Platte County), the Tenth (Marion, Monroe and Ralls counties), the Thirty-second (Bollinger and Cape Girardeau counties), and the Thirty-fourth (New Madrid and Pemiscot counties). *Id.;* §§ 478.090, .100, .155, and .160, RSMo 1978.

the meaning of § 21 of article X. A threshold question, then, is whether existing law at the time of § 21 required Greene County to fund the operation of a public defender office. This question may be answered affirmatively, thus obviating any further § 21 inquiry, if the following two conditions are met: First, the exclusion of Greene County from the provisions of the Public Defender Law (as it existed prior to § 21) was unconstitutional; and, second, the remainder of the Public Defender Law, purged of the exclusion, is severable from the unconstitutional provision and therefore of continuing effect. We hold that these two conditions are met and that Greene County may not therefore claim exemption from the requirements of § 600.-040.

In testing the constitutionality of Greene County's former exclusion from the ambit of the Public Defender Law, it is unnecessary to consider any version of that act prior to the 1976 amendment. Under the 1976 version, public defenders were appointed in all judicial circuits having a population of at least 75,000, except the Thirty-first. Section 600.010, RSMo 1978. Consequently, all counties in judicial circuits having a population of 75,000 or more were required to maintain a public defender office, except for Greene County. Section 600.040, *supra.*

Art. III, § 40 of the Missouri Constitution provides:

The general assembly shall not pass any local or special law:

. . . .

(30) where a general law can be made applicable, and whether a general law could have been made applicable is a judicial question to be judicially determined without regard to any legislative assertion on that subject.

It has been suggested that there are two criteria for determining whether a law is special: first, the classification must be reasonable and not arbitrary; second, the privilege or liability created by the law must apply to all entities within the classification. *Menorah Medical Center v.* *Health & Educational Facilities Auth.,* 584 S.W.2d 73, 81 (Mo. banc 1979). "[A] law is not special in the constitutional sense if it applies alike to all of a given class provided the classification thus made is not arbitrary or without a reasonable basis." *Marshall v. Kansas City,* 355 S.W.2d 877, 884 (Mo. banc 1962).

Under this approach, it would appear to be unnecessary to inquire whether the classification employed by the Public Defender Law was arbitrary or unreasonable, as the law on its face did not purport to apply alike to all members of a described class.

■ However, it is not enough to demonstrate constitutional invalidity to conclude that the statute excepts from its scope persons or things which would, but for the exception, otherwise be affected. In order to find such a statute invalid as a special law, it must be found that members of a stated class are omitted "whose relationship to the subject-matter cannot by reason be distinguished from that of those included." *McKaig v. Kansas City,* 363 Mo. 1033, 256 S.W.2d 815, 817 (banc 1953) (*quoting City of Springfield v. Smith,* 322 Mo. 1129, 19 S.W.2d 1, 5 (banc 1929)). Thus, even a facially special statute, such as the one considered here, may pass muster under § 40(30) if it is determined that some characteristic of the excluded item provides a reasonable basis for excluding it, considering the purpose of the enactment. In this manner, attention is properly focused on "the appropriateness of [the law's] provisions to the objects that it excludes." *State ex inf. Barrett v. Hedrick,* 294 Mo. 21, 241 S.W. 402, 407 (banc 1922) (*quoting Budd v. Hancock,* 66 N.J.L. 133, 48 A. 1023, 1024 (1901)).

This analysis might suggest that the law concerning special legislation does not differentiate between facially special laws and those which purport to be general, as any exclusion must be reasonable and not arbitrary, whether achieved through classification or express exception. However, there is one pertinent distinction.

■ Concerning unconstitutional special legislation, this Court has cited the

principle that the "[o]ne who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." *Id.*, at 241 S.W. at 420 (*quoting Stewart v. Brady*, 300 Ill. 425, 133 N.E. 310, 314 (1921)). If relator in this case were to be impressed with such a burden, its challenge would fail, as there was no showing made before the trial court regarding the reasonableness of the exclusion, and the trial court's judgment upholding the statute's constitutionality could be justified on the basis of relator's failure to make a *prima facie* showing. However, the wording of the recited principle itself suggests the reason why it is inapposite to this case, as relator does not challenge a classification but rather challenges a specific exception from a classification. The rationale for requiring such a *prima facie* showing disappears where the legislation describes an affected class by reference to a factor which bears a reasonable relation to the purpose of the enactment (in this case, population) but then excepts a specific member of that class. In this circumstance, the statute is special on its face and the law may presume its invalidity.[4] Thus, instead of inquiring whether relator met its burden in support of validity, it is proper to consider whether Greene County has offered any possible rationale whereby the Thirty-first Judicial Circuit may be distinguished from all other judicial circuits having a population of at least 75,000 with respect to the need for state-appointed public defenders. No such rationale appears in the record, either at trial or on appeal, nor does any palpably relevant distinction suggest itself to this Court. It must be concluded, then, that the exception of the Thirty-first Circuit from former § 600.010 vio-lated art. III, § 40(30) of the Missouri Constitution.

Having concluded that the 1976 enactment contained an invalid special provision, we must further inquire into the effect of the invalidity of this provision upon the original issue—whether the subsequent enactment of a statute authorizing the appointment of a public defender for Greene County violated art. X, § 21 by imposing a new obligation on the county.

■ We are aided in our inquiry by the following two principles: First, it is the general rule that legislation which is unconstitutional is void *ab initio*, unless injustice occurs as a result of good faith compliance. *State ex rel. Cardinal Glennon Memorial Hospital v. Gaertner*, 583 S.W.2d 107, 118 (Mo. banc 1979). No such injustice occurs here. Therefore, the legislature's attempt to exclude the Thirty-first Circuit and Greene County from the operation of the Public Defender Law was of no effect.

Second, § 1.140, RSMo 1978 provides: The provisions of every statute are severable. If any provision of a statute is found by a court of competent jurisdiction to be unconstitutional, the remaining provisions of the statute are valid unless the court finds the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court finds that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

■ By the valid provisions of the Public Defender Law, the General Assembly ex-

---

4. In *Collector of Revenue v. Parcels of Land,* 517 S.W.2d 49, 53 (Mo.1974), this Court stated that "[f]or the purpose of this provision [art. III, § 40], the distinction between special and general legislation is the distinction between legislation relating to particular persons or things of a class and legislation relating to persons or things as a class." *Id.* at 53. Similarly, *Reals v. Courson,* 349 Mo. 1193, 164 S.W.2d 306, 307–08 (1942), overruled in part, *Walters v. City of St. Louis,* 364 Mo. 56, 259 S.W.2d 377, 382 (banc 1953), *aff'd,* 347 U.S. 231, 74 S.Ct. 505, 98 L.Ed. 660 (1954), states that "[i]n 1880 we adopted Pennsylvania's distinction between or definition of 'special' and 'general' laws. 'A statute which relates to persons or things as a class, is a general law, while a statute which relates to particular persons or things of a class is special' is the way the matter is roughly and broadly put and that suffices for normal purposes." (Citations omitted).

pressed its intention to appoint public defenders in judicial circuits having a population of at least 75,000 and to require counties in those circuits to maintain offices for those public defenders. No suggestion has been made, and it cannot be presumed, that the legislature would have declined to enact these provisions had it known that the exclusion of the Thirty-first Circuit would not be effective. *See Gramex Corp. v. Von Romer,* 603 S.W.2d 521, 526 (Mo. banc 1980). Thus, we conclude that, after excising the invalid provisions of the Public Defender Law, the remainder of the law is severable and enforceable.

■ From these two conclusions, it follows that the Public Defender Law, at least from 1976, mandated the appointment of a public defender for the Thirty-first Judicial Circuit. Obviously, Greene County could not be exempted from its responsibilities by an invalid provision. Consequently, since that date Greene County has been under an existing statutory obligation to provide office space and utility service for the office of the public defender for that county. This obligation was no less genuine because it remained unenforced. Thus, there was no new or increased activity or service beyond that required by existing law. The only conclusion, then, is that § 21 did not prevent the Public Defender Commission from enforcing the county's financial responsibility through this action.

This conclusion is not affected by the previous decision in *Roberts v. McNary,* 636 S.W.2d 332 (Mo. banc 1982). *Roberts* addressed whether a certain user fee was "authorized" prior to the adoption of Mo. Const. art. X, § 22 and therefore immune from its limitation. That constitutional provision prohibits counties from levying any tax, license or fee not authorized prior to its adoption. The fee in question was said to have been authorized in the sense that the voters of the county, in adopting a charter which predated § 22, invested the county council with the power to set all charges within its legislative discretion. This Court rejected that contention. *Roberts, supra,* at 336. In this case, the issue is whether the county was "required" to

provide and maintain an office for the public defender prior to the adoption of § 21 and therefore not affected by that provision. The answer is obviously "yes". By force of law, the obligation of the county prior to § 21 of article X was definite and certain, although neither the county nor the state apparently considered the obligation to be in existence. Nevertheless, a proper plaintiff could have obtained enforcement of the obligation. The requirement placed on the county was potential only in practical effect, in sharp contrast to the potential authorization which characterized the user fee in *Roberts*.

Relator also raises the argument that the Thirty-first Judicial Circuit exemption violates the uniformity of laws application provisions of Mo. Const. art. VI, § 8. However, the decision we reach makes resolution of that issue unnecessary.

The judgment is reversed and the cause remanded to the trial court with directions to issue the writ of mandamus requiring respondents to provide office space and utility services for relator in accordance with § 600.040.1, RSMo Cum.Supp.1983.

Judgment reversed and cause remanded.

All concur.