George H. PACE, et. al.,
Respondents-Appellants,

v.

CITY OF HANNIBAL, Missouri, a
Municipal Corporation,
Appellant-Respondent.

No. 65725.

Supreme Court of Missouri,
En Banc.

Nov. 20, 1984.
Rehearing Denied Dec. 18, 1984.

J. Patrick Wheeler, Canton, for respondents-appellants.

Rhonda C. Thomas, St. Louis, Fredrich J. Cruse, Hannibal, for appellant-respondent.

James J. Wilson, Edward J. Hanlon, St. Louis, for amicus curiae, City of St. Louis (in support of appellant-respondent).

William Patrick Cronan, Fayette, for amicus curiae, Mo. Mun. League.

William H. Dahman, James W. Whitney, Jr., Terry Burnet, St. Louis, for amicus curiae, City of Hermann (in support of respondents-appellants).

Robert B. Hoemeke, Peter T. Wendel, St. Louis, for amicus curiae, Mo. Ass'n of Mun. Utilities (in support of appellant-respondent).

Richard S. Steinberg, St. Joseph, for amicus curiae, City of St. Joseph.

John P. Brown, Columbia, for amicus curiae, City of Columbia.

Karen E. Marty, Springfield, for amicus curiae, City of Springfield.

BLACKMAR, Judge.

The basic question presented by this appeal is whether an increase in the gross amount of funds transferred by the Hannibal Board of Public Works to the general revenue fund of the City of Hannibal as a payment "in lieu of franchise tax" is violative of the so-called Hancock Amendment (Art. X, § 22(a) of the Missouri Constitution).

Since 1914 the City of Hannibal has provided certain utility services to its resi-

dents. The city currently owns and operates a water and sewer system and also distributes electricity. These utility systems are expressly authorized by statute.[1]

In 1957 Hannibal adopted a charter, and is now a home rule constitutional charter city. *See* Art. VI, § 19 of the Missouri Constitution. Under Section 12.07 of the charter, the citizens of the city have vested the Hannibal Board of Public Works with "the exclusive power and duty to establish rates and provide for the assessment and collection of charges" for municipally operated utilities.[2] The board is composed of citizens appointed by the City Council for staggered terms. The record does not demonstrate any guiding standards for the establishment of rates, and, as a municipal utility operation, the board is not subject to the supervision of the Missouri Public Service Commission.

The board, from the inception of the utility operation, has paid annually a percentage of its gross receipts into the general revenue fund of the city. These payments are said to be made "in lieu of a franchise tax," such as is ordinarily levied upon investor-owned utilities.[3] Our attention has not been directed to anything in the charter, statutes or ordinances which mandates such payments by the board. So far as the record shows, the payments are voluntary on the part of the board, and the board could reduce or eliminate them if so disposed. Since 1963 the payments in lieu of franchise tax have been established at 5½ percent of gross revenues from the utility operation.

This litigation is the result of an increase in the rates for water and sewer services decreed by the board in 1981.[4] Application of the 5½ percent factor to the increased utility revenues created a net increase in the amount transferred into the general revenue fund of the city of Hannibal.[5] The plaintiffs, on behalf of a class composed of the utility ratepayers of the City of Hannibal, allege that the 5½ percent factor must be reduced in proportion to the increase in rates, so that the city does not derive additional revenue by reason of the increased rates.

It should be emphasized that the propriety of the rate increase is not placed in issue. It is specifically not asserted that the board lacked the authority to order an increase in utility rates, or that the increase required a vote of the electorate under the terms of the Hancock Amendment.[6] Nor do the plaintiffs challenge the

1. Section 91.450, RSMo 1978 was enacted in 1909 by section 9914, and authorizes cities of the third and fourth class and any city having a special charter to operate its own utilities.

2. We are not informed in the record as to the authority for establishing rates prior to 1957.

3. Natural gas is provided for the residents of Hannibal by an investor-owned utility. It is required to pay a franchise tax to the city which is calculated on the basis of gross revenues. Many publicly-owned utilities do transfer some revenue to the taxing bodies in what is called a "payment in lieu of taxes". *See* Hall, *Are Rates Charged by Government-Owned Utilities Too Low?*, 112 Public Utilities Fortnightly 37, 38 (August 4, 1983).

4. Effective July 1, 1981, the charges for water and sewer services were increased as follows:
WATER
—from $.99 to $1.24 per one thousand gallons for the first 5,000 gallons.
—from $.84 to $1.09 per one thousand gallons for the next 20,000 gallons.

—from $.59 to $.84 per one thousand gallons for the next 25,000 gallons.
—from $.51 to $.76 per one thousand gallons for the next 1,450,000 gallons.
—from $.46 to $.71 per one thousand gallons for any gallons over such amount.
Additionally, the minimum charge was increased from $2.00 to $3.00 per month.
SEWER
—from one half of the water bill per month to $.98 per one thousand gallons of water used plus a minimum charge of $.95 per month.

5. For fiscal year 1982, the first full year after the utility rate increases, a net increase of $26,608.98 was transferred by the Board of Public Works to the general revenue of the City of Hannibal.

6. We do not decide whether the Board of Public Utilities is a "political subdivision" within the meaning of Art. X, § 22(a) of the Missouri Constitution.

authority of the board to make payments to the city in lieu of franchise taxes.

The petition asserted four claims, as follows: (1) that no statute, ordinance or charter provision established adequate guiding standards for the setting of utility rates by the board; (2) that the board, under the provisions of the Hancock Amendment,[7] had the duty of reducing the percentage factor for the payment in lieu of franchise taxes in proportion to the increase of rates; (3) that the ratepayers were entitled to a refund, on account of the rollback provision as described in point (2); and (4) that the plaintiffs were entitled to attorneys' fees in accordance with the provisions of the Hancock Amendment.

The trial court sustained contentions (2) and (4) of the plaintiff's petition, holding that the board was required to reduce the 5½ percentage factor, and awarding attorneys' fees. It denied the claim for refund as set forth in contention (3), on the ground that there was no express authority for ordering a refund as prayed, and also rejected contention (1) finding that there was no unlawful delegation of legislative authority. Both parties have appealed from the portions of the decree adverse to them. The plaintiffs also ask for an additional allowance of attorneys fees on appeal.

■ We are met at the outset with a question of jurisdiction. The essential test is whether the validity of the amendment is challenged,[8] and such is not the case here. The jurisdictional provisions of the Hancock Amendment[9] are not appropriate either, because the state is not involved in this case. Nor is the Hancock Amendment a "revenue law" in the constitutional sense. Inasmuch, however, as the point is fairly

arguable, and the parties have come here in good faith to brief and argue the case, we elect to assume jurisdiction.[10]

Having considered the case, we conclude that the grant of authority to fix utility rates is not invalid as an improper delegation of legislative power, and affirm the judgment of the trial court on plaintiffs' contention (1). We conclude that the Hancock Amendment does not require a rollback, and therefore reverse the decree of the trial court on contention (2). Since we find no violation of the provisions of the Hancock Amendment, plaintiffs' contentions (3) and (4) fall out of the case.

### 1. Invalid Delegation of Legislative Power

■ It is the plaintiffs' contention that the blanket authority vested in the board to fix utility rates[11] constitutes an invalid delegation of legislative power. Although plaintiffs cite several cases about unlawful delegation of legislative power, none is a utility case. No authority has been cited which supports the claim made here nor do the plaintiffs question the reasonableness of the rates set by the board in 1981.

Moreover, the purpose in making this argument is difficult to perceive. The claim, carried to its logical extreme, would invalidate the entire utility system, for utilities cannot operate without charging their patrons for the services furnished. The authority to operate a municipal utility connotes the authority to operate it on a sound basis. *Oswald v. City of Blue Springs,* 635 S.W.2d 332, 333–34 (Mo. banc 1982). Were this not so, the utilities would either cease to operate or else they would constitute a permanent drain on the city treasury and on taxpayers in general. Such obvi-

7. Section 22(a) of the Hancock Amendment, later quoted in full, requires a rollback in certain instances.

8. Art. V, § 3 of the Missouri Constitution.

9. Art. X, § 23 of the Missouri Constitution.

10. *See Foremost-McKesson, Inc. v. Davis,* 488 S.W.2d 193, 196 (Mo.banc 1972) where this Court said, "by reason of the general interest and importance of the other questions in the case and need for adjudication at this level, that

we will retain and decide the case, rather than go through the time-consuming procedure of sending the case to the Court of Appeals and then transferring it back prior to opinion."

11. Section 12.07 of the Hannibal City Charter vests the Board of Public Works with "the exclusive power and duty to establish rates and provide for the assessment and collection of charges" for city operated utilities.

ously was not the intention of the legislature in authorizing municipal utilities. It should not be difficult to determine how much the utilities must charge in order to maintain their operations on a sound basis and to provide for reasonable returns.

The plaintiffs argue that there must be some restraints on the power of the board to prescribe rates, because rates for municipal utilities, in contrast to those of investor-owned utilities, are not subject to regulation by the Missouri Public Service Commission. The argument is not persuasive because there is a vital distinction between municipal utilities and investor-owned utilities.[12] The latter have as their ultimate purpose the realization of a profit for the shareholders. The legislature, in its wisdom, might well have concluded that investor-owned utilities, endowed with natural monopoly, should not be allowed complete discretion as to rates charged, because they would be tempted to maximize profits free from competitive inhibition. The legislature might also conclude that normal political pressures would be sufficient to keep rates of municipal utilities in line.[13] There is no particular motive for turning a profit. We need not speculate as to whether some sort of lawsuit might be filed to prevent a municipality from charging unreasonable rates for utility service. No such claim has been presented here.

The claim of unlawful delegation of legislative power, for whatever purpose advanced, is not meritorious. The trial judge did not err in refusing the relief sought.

### 2. Hancock Amendment

The trial court upheld the plaintiffs' assertion that there was a violation of Art. X, § 22(a) of the Missouri Constitution, finding that the payments in lieu of franchise tax came within the language "tax, license, or fees." The pertinent provisions are as follows:

Counties and other political subdivisions are hereby prohibited from levying any tax, license or fees, not authorized by law, charter or self-enforcing provisions of the constitution when this section is adopted or from increasing the current levy of an existing tax, license or fees, above that current levy authorized by law or charter when this section is adopted without the approval of the required majority of the qualified voters of that county or other political subdivision voting thereon. If the definition of the base of an existing tax, license or fees, is broadened, the maximum authorized current levy of taxation on the new base in each county or other political subdivision shall be reduced to yield the same estimated gross revenue as on the prior base. If the assessed valuation of property as finally equalized, excluding the value of new construction and improvements, increases by a larger percentage than the increase in the general price level from the previous year, the maximum authorized current levy applied thereto in each county or other political subdivision shall be reduced to yield the same gross revenue from existing property, adjusted for changes in the general price level, as could have been collected at the existing authorized levy on the prior assessed value.

The plaintiffs place strong reliance on *Roberts v. McNary*, 636 S.W.2d 332 (Mo. banc 1982), for the proposition that the in lieu of franchise tax payment is a tax within the meaning of Art. X, § 22(a) because it is paid into the general revenue fund of the city. *Roberts* specifically involved fees charged by St. Louis County for "numerous county services, such as parks and building inspection." This case held that all charges to the public for governmental services were within the provisions of the amendment, whether or not paid into a

---

12. This distinction is highlighted in Hall, *supra* note 3.

13. In addition, the rates charged by government-owned utilities are generally lower than those charged by privately-owned utilities. Thus, one of the main reasons for government

regulation of private utilities—to keep rates reasonable—does not exist for municipal utility operations. For a good economic explanation of why those rates are lower *see* Hall, *supra* note 3.

general revenue fund, and could not be increased without a vote of the people. We found that this conclusion flowed from the plain language of the amendment. Citing dictionary definitions of "tax" "license" and "fee", the Court declined to narrow these words so as to apply only to those levies which seek to raise general revenue.

■ The Hancock Amendment requires voter approval for increases in taxes, licenses or fees, with the purpose of reining increases in governmental revenue and expenditures. *Roberts, supra* at 336, *Buchanan v. Kirkpatrick,* 615 S.W.2d 6, 14 (Mo.banc 1981). So far as this record shows the payments in lieu of franchise tax were not imposed by statute, charter or ordinance, but represented voluntary payments by the board into the city's general revenue fund. There is no similarity to the user fees considered in *Roberts* because the 5½ percent factor is not charged against the users. They pay the increased rates, to which the percentage factor is then applied. Thus the application of a preexisting 5½ percent factor to the rate increase simply does not amount to the imposition of a "tax, license or fee" in the sense of Art. X, § 22(a). To hold that the payments in lieu of franchise tax are covered by the Hancock Amendment would enlarge upon its plain language, contrary to the teaching of *Roberts v. McNary, supra.*

We do not understand the plaintiffs to claim that they should be entitled to partial relief on the ground that the payments in lieu of franchise taxes were invalid. The plaintiffs concede that if a franchise tax were levied against a private utility, based on a percentage of gross receipts, and if the utility's rates were then lawfully increased, the Hancock Amendment would not require a rollback. They likewise concede that the rate of a municipal sales tax would not have to be adjusted simply because the tax were found to generate more revenue than in past years.

The purpose which appears in the whole plan of utility operations is to place munici-pal utilities on the same basis as investor-owned utilities. A public utility, whether investor or publicly owned, requires a franchise to operate. Franchises, in addition to awarding monopoly, also regularly permit the use of public property, including streets, for the location, maintenance and repair of the utility's distribution facilities. A franchise tax is designed, in part at least, to repay the municipality for inconvenience and expense attending the use of public property.[14] It is fairly inferable that the payments made by the Hannibal Board of Public Utilities were designed to make similar compensation to the city. Were it not for the payments in lieu of franchise tax it would be appropriate for the city to levy a charge against the Board of Public Utilities for the fair value of the use of public property, including provision for maintenance and repair on account of wear, tear and damage attributable to the utility.

Inasmuch as the payments do not fall within the compass of "tax, license or fees," there is no ground for applying the "rollback" provisions triggered by a broadening of the base for a "tax, license, or fees." Here too the language of the amendment simply does not fit the facts before us.

There is absolutely no showing that the basic rate increase was occasioned by anything other than a good faith determination by the board that the increase was necessary to a sound operation. The utility operation, the setting of rates by the board, and the payments in lieu of franchise tax, are all long established and should not be lightly disturbed. We need not speculate further except to say that the situation shown by this record simply does not fit Art. X, § 22(a) of the Missouri Constitution.

The judgment finding violation of Art. X, § 22(a) is reversed. This reversal destroys the basis for fees and so that portion of the judgment allowing fees is likewise reversed. The balance of the judgment is affirmed.

**14.** *See* Hall, *supra,* note 3.

RENDLEN, C.J., and WELLIVER, HIGGINS, GUNN and DONNELLY, JJ., concur.

BILLINGS, J., dissents in separate opinion filed.

BILLINGS, Judge, dissenting.

The principal opinion squarely recognizes there is a "question of jurisdiction" for this Court to entertain this appeal under Art. V, § 3, of the Missouri Constitution, but, nevertheless, concludes that because "the parties have come here in good faith to brief and argue the case, we elect to assume jurisdiction", relying upon *Foremost-McKesson, Inc. v. Davis*, 488 S.W.2d 193 (Mo. banc 1972).

The jurisdiction of this Court is carefully delineated to certain specifically described classes of cases and the instant appeal falls beyond the narrow scope of our jurisdiction as found in the Constitution. Consequently, jurisdiction of this appeal is in the court of appeals and we should not, under the guise of the "general interest and importance" rubric found in Foremost-McKesson, reach out to take or elect to assume jurisdiction of appeals which the Constitution directs elsewhere. To do so, in my view, flies in the face of the clear provisions of the Constitution we are charged with following. The fact that we are the court of last resort does not and should not give us that license.

I would transfer the appeal to the court of appeals as provided by Art. V, § 11, Mo.Const.