Clarence L. ZAHNER, Respondent,

v.

CITY OF PERRYVILLE,
Missouri, Appellant.

No. 73136.

Supreme Court of Missouri,
En Banc.

July 23, 1991.

Rehearing Denied Sept. 10, 1991.

David G. Beeson, Stephen Wilson, Jackson, for appellant.

Tom K. O'Loughlin II, Kathleen A. Wolz, Cape Girardeau, for respondent.

COVINGTON, Judge.

The City of Perryville appeals from a judgment ordering the City to refund assessments against certain properties for improvements, maintenance, or upkeep of existing paved streets abutting the properties, and restraining the City from further assessments without submission of the City's street policy to a vote of the citizens. The judgment is reversed and the cause is remanded.

This case involves construction of section 22(a) of article X of the Missouri Constitution. Sections 16–24 of article X were adopted on November 4, 1980. As pertinent to the questions presented here, section 22(a) provides:

(a) Counties and other political subdivisions are hereby prohibited from levying any tax, license or fees, not authorized by law, charter or self-enforcing provisions of the constitution when this sec-

tion is adopted or from increasing the current levy of an existing tax, license or fees, above that current levy authorized by law or charter when this section is adopted without the approval of the required majority of the qualified voters of that county or other political subdivision voting thereon.

Clarence L. Zahner, resident and taxpayer of the City of Perryville, filed a petition in the circuit court on June 3, 1988. He alleged that certain portions of the City's street improvement policy offended article X, section 22(a), of the Missouri Constitution, in that the City levied or increased the current levy of a tax, license or fee without approval of a majority of voters of the City.

Each party sought summary judgment upon submission of stipulated facts. The City of Perryville is a fourth class city. Prior to and after adoption of section 22(a), the City has effected street construction, improvement and repair under authority of Chapter 88, RSMo 1986.[1] Until November 6, 1980, the City was without written or standard "street policy." The City employed various methods and percentages of contribution from the general revenue and from abutting property owners. As a general practice, the City assessed against the abutting property the initial cost of paving an unpaved street but maintained streets at city expense. Curb and gutter work was not a regular part of the street work performed by the City.

On November 6, 1980, the City, through its mayor and board of aldermen, adopted its first written street policy. Three revisions followed, the last adopted June 1, 1988. The City adopted the first policy and all the revisions without voter approval.

Between 1985 and 1989 the City undertook numerous construction, maintenance or improvement projects. One involved Pine Street, an existing paved street without curbs, gutters or storm water control,

which was improved under the third revised policy. Deeming the improvements necessary, the City assessed against the abutting property 100% of the cost for curbs, gutters and storm water control. See §§ 88.680, .700. Zahner paid under protest a "special tax assessment bill" of $1,629.59 for improvements under this project. Zahner claimed the City increased existing fees and charges for street improvements without approval of the required majority of the qualified voters of the political subdivision and without submitting the matter to the voters of the City of Perryville, in violation of article X, section 22(a), of the Missouri Constitution. Zahner further contended that the City undertook to tax residents under its street policy.

Entering judgment in favor of Zahner,[2] the trial court concluded that the special assessments levied by the City in the form of tax bills for street improvements could be characterized as either a tax or a fee within the meaning of article X, section 22(a). The court also concluded that the assessments made by the City of Perryville under its first written street policy and under its subsequent and revised policies violated the constitutional provision in that they impermissibly increased the percentage of contribution required of the taxpayers of the City above the percentage of contribution required of the taxpayers on November 4, 1980, without the required voter approval. The court ordered the City to refund the $1,629.59 paid by Zahner and to pay his attorney fees, and restrained the City from further assessments under any street policy without approval of the voters.

The dispositive question is whether the assessments at issue are taxes or fees within the meaning of article X, sections 16–24. If the special assessment is a tax or fee, the voters of the political subdivi-

---

1. Section 88.700, RSMo 1986, permits a majority of affected property owners to file protests to prevent assessment for improvements, but, for sound policy reasons, does not provide for submission of the question to all qualified voters of the political subdivision.

2. The judgment also purports specifically to adjudicate interests of other named taxpayers who filed protests.

sion must give prior approval to the assessment. The City contends that the special assessments are neither taxes nor fees within the meaning of section 22(a). Zahner proffers arguments in support of the assessment's being, in the alternative, a fee or a tax. In so arguing he acknowledges *Tax Increment Fin. Comm'n v. Dunn Constr.*, 781 S.W.2d 70, 77 (Mo. banc 1989), in which this Court found certain payments in lieu of taxes to be special assessments rather than taxes, but asks the Court to reconsider the question of special assessments.

■■■ Insofar as it reaches, Zahner's assertion that a special assessment may be a tax or fee is not incorrect. Mere denomination of a charge as a "special assessment" does not per se insulate the charge from application of section 22(a). This Court must determine whether the language of section 22(a) encompasses the assessment at issue. In making that determination, the court must undertake to ascribe to the words the meaning the people understood the words to have when they adopted the provision. *Boone County Ct. v. State*, 631 S.W.2d 321, 324 (Mo. banc 1982). The meaning conveyed to the voters is presumed to be the ordinary and usual meaning, which is derived from the dictionary. *Id.*

While the words "special assessment," "fee," and "tax" may sometimes be used interchangeably, the term "special assessment" is generally understood to be related either to a specific property or a specific purpose. Webster's Third New International Dictionary 131 (1965). The special assessment levied in this case comports with the general understanding of a special assessment and does not comport with the definition of either tax or fee as the meanings of those words derive from the dictionary and from previous interpretation by this Court.

■■■ The initial inquiry presented is whether the special assessment against abutting properties is a fee. This Court first defined "fee," in the context of article X, sections 16–24, in *Roberts v. McNary*, 636 S.W.2d 332, 335 (Mo. banc 1982). A fee is "a fixed charge for admission; a charge fixed by law or by an institution for certain privileges or services; a charge fixed by law for services of a public officer." From the commonly understood meaning recognized in *Roberts*, it is apparent that the assessments at issue are not fees. Zahner nevertheless sets forth a novel assertion that the assessment for curb and gutter installation is a fee charged property owners for the privilege of having their streets maintained by the City. Under the scheme set up by the City, he suggests, maintenance of public streets became contingent upon the street's having curbs and gutters. In support of this proposition, Zahner refers to the street policy provision that the City will overlay an existing street only when there are existing curbs and gutters. As a result, Zahner maintains, payment of the assessment for curbs and gutters "purchased" the "privilege" of street maintenance—a "service" which had been provided to the City residents for many years. Zahner's argument disregards, however, other provisions in the policy under which the City provides routine maintenance to streets without curbs and gutters. As a consequence, Zahner's contention in this regard fails. The special assessments made by the City under authority of Chapter 88 are not fees.

■■■ It remains to determine whether the special assessment at issue is a tax. This Court has previously considered the definition, both prior to and since the adoption of article X, sections 16–24. *See, e.g., Roberts v. McNary*, 636 S.W.2d 332; *Craig v. City of Macon*, 543 S.W.2d 772 (Mo. banc 1976); *Leggett v. Missouri State Life Ins. Co.*, 342 S.W.2d 833 (Mo. banc 1960). Taxes, as well as fees, have been defined not only by what they are but also by what they are not. In *Roberts* this Court noted the dictionary definition of tax as " 'a pecuniary charge imposed by legislative or other public authority upon persons or property for public purposes: a forced contribution of wealth to meet the public needs of a government.' " 636 S.W.2d at 335 (quoting Webster's Third New International Dictionary 2345 (1965)).

In *Roberts* the Court also cited *Craig*, which in turn quoted *Leggett:*

'Taxes are "proportional contributions imposed by the state upon individuals for the support of government and for all public needs" ... Taxes are not payments for a special privilege or a special service rendered ... Fees or charges prescribed by law to be paid by certain individuals to public officers for services rendered in connection with a specific purpose ordinarily are not taxes ... unless the object of the requirement is to raise revenue to be paid into the general fund of the government to defray customary governmental expenditures ... rather than compensation of public officers for particular services rendered....'

*Roberts*, 636 S.W.2d at 335–36. In *Tax Increment Fin. Comm'n v. Dunn Constr.*, 781 S.W.2d at 77, this Court noted that *Roberts* is not inconsistent with *Leggett*, and stated that an exaction demanded by the government for specific purposes and not intended to be paid into the general fund to defray general public needs or governmental expenditures is not a tax.

The special assessment tax bills against abutting properties caused to be charged by the City of Perryville fit none of the established definitions of a tax. The payments made by the residents were for a specific purpose. The board of aldermen, through its street policy, clearly recognized a special benefit to property owners as a result of street improvements. According to ordinance, the amount of each assessment was determined by the cost of the improvement. Property owners were assessed pro rata according to the lineal footage of the improvement abutting their properties. The city clerk issued tax bills, payable to the contractor doing the work. There was no payment into the City's general fund. The procedure employed in this case by the City of Perryville is one of special assessment as that term is commonly understood, and is not one of taxation as that term is commonly understood and has been interpreted by this Court in the context of article X, sections 16–24.

Zahner alleges that the owners paid assessments into the general fund in the sense that the payments allowed the City to expend money from its general fund for purposes other than street improvement. Zahner contends that, since the City paid for some curb and gutter work before the amendment was adopted, assessing the costs to owners now frees money from the general revenue fund that otherwise would have been expended to pay for street improvements. Zahner's contentions in support of his argument that the assessment was, in effect, a payment to the general revenue fund are purely speculative and are not supported by the record. The record reflects only one instance in which the City paid for curb and gutter work prior to adoption of article X, sections 16–24. The record is devoid of evidence that the City would otherwise have used the general revenue to install curbs and gutters.

Zahner argues that there is no showing that any special benefit was conferred on residents of the improved streets. His argument is not well taken. He did not raise the challenge below. Furthermore, a legislative determination that benefits are conferred is conclusive on both the owner and the courts, unless it is made to appear that the legislative action is fraudulent, or arbitrary and wholly unwarranted, and by reason of its arbitrary character, is mere confiscation of particular property. *City of Webster Groves v. Taylor*, 321 Mo. 955, 13 S.W.2d 646, 647 (1928). In this case the board of aldermen through the street policy recite that the improvements benefit the properties. Zahner does not contend that the legislative determination is arbitrary, and nothing in the record indicates that the character of the determination is arbitrary. Zahner fails to meet his burden.

Zahner argues that the express exclusion, in section 22(b), of taxes related to certain bonds implies that there can be no exclusion of special assessments. His analysis in this regard requires no further explication because it rests upon the mistaken premise that the assessment at issue is a tax.

This Court finds that the special assessments made by the City are neither taxes nor fees within the meaning of article X, section 22(a), of the Missouri Constitution. The judgment of the trial court is reversed and remanded for further orders not inconsistent with this opinion.

ROBERTSON, C.J., BLACKMAR, J., and HIGGINS and SEILER, Senior Judges, concur.

RENDLEN, J., dissents in separate opinion filed.

HOLSTEIN, J., dissents and concurs in dissenting opinion of RENDLEN, J.

RENDLEN, Judge, dissenting.

For the reasons following I respectfully dissent.

The majority downplays essential facts which when fully illumined, cast a favorable light on the action of the trial court requiring affirmance of its judgment.

Article X sections 16–24 (commonly referenced as Hancock), adopted by the people in 1980 as amendments to the Missouri Constitution, have as their central purpose, placing a lid on government taking by tax, license or fees without prior voter approval, and a correlative lid on governmental spending (though for legitimate governmental purposes) within limits prescribed by these amendatory sections. *Buchanan v. Kirkpatrick*, 615 S.W.2d 6 (Mo. banc 1981). In this case the City of Perryville in bygone years acquired lands for the construction and maintenance of its streets. These are *public* streets on *public* lands maintained by the city for the benefit of the *public* at large, and any person may use the streets, subject only to the usual safety regulations, for public travel. In 1987 and 1988, the city adopted resolutions for the improvement of Pine Street where plaintiff Zahner lives and whose property abuts the street. On November 16, 1988, the City Board authorized construction of curbs and gutters on portions of Pine Street and adopted an ordinance levying special assessment on the abutting property owners. Pursuant thereto, special tax bills were issued against plaintiff's property for payment of construction costs. In these matters, Perryville, a city of the fourth class, followed the financing scheme permitted in Chapter 88, RSMo 1986, entitled "Public Works and Special Assessments Therefor," and particularly Sections 88.700, "Street Improvement—declaration of necessity—taxpayers' protest (fourth class cities)," Section 88.703, "Street Repairs—cost, how paid (fourth class cities)," and 88.707, "Certain Street Improvements—protest, how heard and determined." By these statutes the legislature permitted cities of the fourth class to pay for such improvements in the following manner:

> Any of said improvements to be paid for by such city may be paid for by said city out of the general revenue funds if the council so desires, but all such work and improvements shall be paid for with special *tax bills* unless the proceedings of the city for the same specify that payment will be made out of the general revenue funds of said city.

Section 88.703 (emphasis added). In this case, as noted by the majority, the city chose the "tax bill" method of funding, by which the city clerk issued tax bills, payable to the contractor during the work. These "tax bills" were available for levy upon the land of plaintiff, who paid this "special tax," used to defray this public expense, under protest.

As specified in Section 88.703, RSMo 1986, penalties are provided:

> for failure to pay such *special tax* within a given time, and any such *tax bills* ... shall constitute a lien upon the property liable therefor until paid. (Emphasis added.)

It cannot be seriously questioned that the legislature recognized and denoted these assessments as a special tax, and further that until paid the tax bills "shall bear interest of eight percent per annum from the date of issue." Section 88.703. The statutes are specifically couched in traditional "tax" language, employing the term "special tax" and providing the accepted means of "liens" upon the land for the tax assessed and penalties for late payment.

Payment of the "tax" assessment was understandably "protested" by plaintiff in the usual manner for protecting his rights as a taxpayer. .

The legislative scheme of Chapter 88 in 1980 and prior years did not require voter approval for any *new* tax that might be imposed by the city under Sections 88.700, 88.703 or 88.707, but all this changed in 1980 by Hancock, for in that year the constitutional amendment added the requirement of voter approval for such *new* taxes, regardless how laudatory the purposes for which this *new* revenue was to be expended. The majority erroneously concludes that the extracting of money by force of law from a landowner, to be used for a public street, is not a tax, citing *Tax Increment Financing Commission of Kansas City v. J.E. Dunn Construction Co.*, 781 S.W.2d 70 (Mo. banc 1989). There this Court avoided application of Hancock to the Missouri Real Property Tax Increment Allocation Redevelopment Act, Sections 99.800 to 99.865, RSMo 1986, by holding that:

> First, it makes no difference to the resolution of this point whether PILOTS are taxes as Dunn contends, or not. The Constitution does not prohibit a city from levying an existing tax without voter approval; instead, it prohibits a city from increasing the current *levy* of an *existing* tax without voter approval. It is the tax levy against which the constitution's prohibition is measured, not the tax itself,

*Dunn*, 781 S.W.2d at 74 (emphasis added), and that the record there disclosed no increase in the tax levy, hence this statement:

> Second, Dunn does not argue, nor could it on this record, that the City has increased its tax levy. Indeed, the record shows that the PILOTS at issue are the product of the application of the current levy to increased assessed valuations. The evidence does not show any change in the tax levy.

*Id.* at 74–75.

Though in the case *sub judice* this "tax" is described and referenced in the statute as a "special tax" and though as stated in *Roberts v. McNary*, 636 S.W.2d 332, 335 (Mo. banc 1982), that a tax is "a pecuniary charge imposed by a legislative or other public authority upon persons or property for public purposes: a forced contribution of wealth to meet the public needs of a government," and though in this case it is assessed as a *new* tax upon realty, for which "tax bills" were issued, and private property was subjected to liens of the tax bills, the majority nevertheless concludes it is not a "tax" within the meaning of Hancock. The majority asserts that because the city fathers believed "a special benefit [accrued] to property owners as a result of street improvements" and that the payments from the landowners were for a "specific purpose and not intended to be paid into the general fund to defray public needs or governmental expenditures," the money paid by plaintiff was somehow "not a tax." In this, I submit, the majority errs; it misses the point of Hancock. The money paid by plaintiff was a *new* tax never before assessed against his land. It was imposed by the government for improvement on *public land.* Special assessments are levies used to confer benefit upon the parcels charged for the improvements; in contrast, the improvements here are by the city upon its own property for use by the public. The fact that the city in the exercise of its public power chose to improve its streets at a place where the street happens to abut the land of plaintiff does not somehow magically transform the city tax into something other than a tax and thus slide laterally from Hancock's protective cover, which was adopted by the people to provide such protection. This is quite unlike the purchase money in *Dunn* by which the municipality acquired private property and resold it to private investors and which (whether or not it was a tax) did not increase the current levies and was thus beyond the reach of Hancock. Here in effect the levy was increased, for a new tax was added to provide improvement to publicly owned and maintained city streets. Further, the fact that the monies were collected by the city through its "bill collector" (the contractor who did the work) cannot be said to transform the monies from "tax

payments" into something different or not contemplated by Hancock. The constitutional amendment to Article X can not be so neatly avoided by a public entity which it seems to me is patently included within the clear language and avowed purposes of the amendment. The fact that the city does not directly collect the tax but instead decrees the levy, issues the tax bills and is empowered to impose liens upon the private property of landowners cannot alter the fact that *a tax is a tax.*

This tax, unlike the "PILOTS" of *Dunn,* is not for the purchase of private property but is for the direct and sole purpose of improving public streets.

While it is important that Hancock, which requires approval by the qualified voters of the city before a new tax may be imposed, affords real protection for property owners threatened with such tax, the Hancock protection is but an additional failsafe mechanism against imposition of such new taxes. The original safeguard found in § 88.700 remains. That section provides that a fourth-class city which proposes that such "a special tax ... be levied" must first publish notice of its resolution and may only "cause the improvements to be made" if:

a majority of the owners of the property liable to taxation therefor, residing in the city at the date of the passage of such resolution, shall not, within ten days from the date of the last insertion of the resolution, file with the city clerk their protest against [such improvements].

Thus, property owners enjoy the shelter of both the Constitution and the statutes as to such special taxing ordinances.

I would affirm the judgment of the trial court.