Edwin L. DIRCK, et al., Respondents,

v.

STATE of Missouri, et al., Appellants,

and

Mel Hancock, et al., Intervenors.

No. 65085.

Supreme Court of Missouri,
En Banc.

Feb. 2, 1984.

Dissenting Opinion March 2, 1984.

---

## ORDER

PER CURIAM.

The Court having considered the briefs and arguments of the parties finds there is no justiciable controversy between the parties, ripe for adjudication. It is therefore ordered that the judgment of the trial court be and hereby is vacated and cause dismissed. *See Buechner v. Bond,* 650 S.W.2d 611 (Mo. banc 1983); *Goode v. Bond,* 652 S.W.2d 98 (Mo. banc 1983).

All concur except RENDLEN, C.J., who dissents with Dissenting Opinion to follow.

RENDLEN, Chief Justice, dissenting.

I respectfully dissent from the Per Curiam Order entered February 2, 1984, dismissing the cause on the ground "there is *no* justiciable controversy between the parties, ripe for adjudication." (Emphasis supplied). In my view, this case does present a justiciable controversy ripe for adjudication.

Plaintiffs-respondents are three Missouri taxpayers seeking a declaratory judgment and praying injunctive relief. Their petition alleges that (1) the revenues received by the State of Missouri in fiscal year 1981–82 exceeded the *revenue* limit established in the Missouri Constitution, Article X, Section 18(a) by one percent or more, (2) the total appropriations of State revenues for fiscal year 1982–83 exceeded the *spending* limit established in the Missouri Constitution, Article X, Section 20, (3) the refund mechanism imposed upon Missouri State government by Article X, Section 18 of the Missouri Constitution offends the Fifth and Fourteenth Amendments to the United States Constitution and is therefore invalid, and (4) the remaining provisions of the "Hancock Amendment" are not "severable" from the refund provision and, accordingly, they too become voidable.

Plaintiffs further aver that as taxpayers, their constitutional rights have been violated by the taking of tax dollars beyond the limits imposed by the Missouri Constitution, Article X, Section 18(a). They allege that judicial evaluation of total State revenues would lead to a determination that both the *taxation* and *spending* limits imposed by the Hancock Amendment have been exceeded so that a refund is presently due and owing Missouri *income taxpayers* from currently collected revenue. Finally, as taxpayers, plaintiffs challenge the constitutionality of the "Hancock" scheme for distribution of revenue to a single class based upon *income tax* liability and pray

that the defendant State Treasurer be enjoined from issuing any check or otherwise withdrawing funds from the Treasury of the State of Missouri to distribute such refunds to any individual or corporate *income* taxpayer.

Plaintiffs' claims fall into two categories: (1) that defendants are violating Article X, Sections 18 and 20 of the Missouri Constitution by authorizing expenditures in excess of the spending limit and incorrectly calculating total state revenues; (2) that Article X, Sections 16 through 24 contravene the United States Constitution. Though the latter, *i.e.* plaintiffs' claims of invalidity under the United States Constitution, may be reached only after the former are adjudicated and it has been judicially determined that total state revenues do in fact (as has been averred) exceed the revenue limit established in Section 18 by one percent or more, this procedural sequence does not impair the justiciability of claims that Sections 18 and 20 of the Hancock Amendment are not being enforced according to their terms.[1] Indeed, this Court's prior pronouncements arising under the Hancock Amendment support the conclusion that the case *sub judice* presents a "ripe" justiciable controversy.

*Buechner v. Bond,* 650 S.W.2d 611 (Mo. banc 1983), was an action brought by taxpayers who prayed for judgment declaring that the State had miscalculated total state revenues. Taxpayers claimed the State improperly included the "opening balance" for fiscal year 1980–81 in its calculation of "total state revenues" in that fiscal year, the base-year for calculating the revenue limit established by Article X, Section 18(a). They sought to lower the 1980–81 base-year "total state revenues" by excluding the "opening balance." This, in turn, would lower the ceiling on allowable revenue for purposes of triggering the refund provision of Article X, Section 18(b). The trial court found against plaintiffs and held the opening balance was properly includable in "total state revenues." Reversing that judgment, this Court ordered that the opening balance be excluded from the calculation of total state revenues, thereby lowering the ceiling (revenue limit) for triggering a refund under the Hancock Amendment.

Thus, the Court recognized the propriety of an action seeking such declaratory judgment and undertook the responsibility for construing the term "total state revenues" of Article X, Sections 16 through 24 of the Missouri Constitution, effectively determining the cause, which was justiciable to that extent. In so doing, the Court considered plaintiffs' allegation that the State had misconstrued the constitutional terms and miscalculated total state revenues for fiscal year 1980–81 by including the opening balance for that year and concluded that the pertinent Missouri Constitution section defines "total state revenues" as not including the "opening balance." However, because the plaintiffs in *Buechner* could neither allege nor prove that the spending limits *had been exceeded* but could only prove that the miscalculation of total state revenues would "probably" result in future expenditures beyond the Hancock Amendment limit, this Court found the claim that, "the refund mechanism violates the equal protection clause" would not be reached. In sum, unlike the case at bar, it was neither pleaded nor proved that the refund

---

1. Article X, Section 23 of the Missouri Constitution makes a suit by taxpayers to enforce provisions of Article X, Sections 16 through 22 a justiciable controversy. Section 23 provides,

> Notwithstanding other provisions of this constitution or other law, any taxpayer of the state, county or other political subdivision shall have standing to bring suit in a circuit court of proper venue and additionally, when the state is involved, in the Missouri Supreme Court, to enforce the provisions of sections 16 through 22, inclusive, of this article and, if the

> suit is sustained, shall receive from the applicable unit of government his costs, including reasonable attorneys' fees incurred in maintaining such suit.

And where, as here, it is alleged that sections 18 and 20 "of this article" have not been enforced according to their terms, the controversy is undoubtedly ripe for adjudication. *Roberts v. McNary,* 636 S.W.2d 332 (Mo. banc 1982); *Buchanan v. Kirkpatrick,* 615 S.W.2d 6 (Mo. banc 1981).

provision *had been* triggered or that in the foreseeable future an excess *would* cause a refund, and accordingly, the Court held that claim was not "sufficiently immediate," to be ripe for adjudication. *Buechner v. Bond*, 650 S.W.2d at 614.

*Goode v. Bond*, 652 S.W.2d 98 (Mo. banc 1983), was a taxpayers' suit seeking declaratory judgment that the State had miscalculated total state revenues by excluding Proposition C funds.[2] Plaintiffs claimed the receipts from Proposition C constituted a part of "total state revenues" and the State was erroneously excluding such funds from its calculation of total state revenues for purposes of determining compliance with the revenue limit established by Article X, Section 18(a). Plaintiffs also claimed that inclusion of Proposition C funds in the calculation of "total state revenues" *would* increase the anticipated State revenues for the following fiscal year and thereafter exceed the anticipated revenue limit for that fiscal year. The trial court considered this challenge to the legality of the State's exclusion of Proposition C funds from the calculation of "total state revenues" and entered summary judgment for defendants declaring that the one-cent increase in sales tax approved by the voters in Proposition C was not to be included in the calculation of total state revenues. That is, the revenue produced by Proposition C was not subject to the taxing limit established in Article X, Section 18 because such increased revenue resulted from direct voter approval as permitted by Article X, Section 16, of the Missouri Constitution.

This Court affirmed the trial court's order by application of Article X, Section 16 in its Per Curiam Order. The Court explicitly held the application of that constitutional provision excluded the voter-approved one-cent increase in sales tax from the calculation of total state revenues and to that extent, the Court in *Goode* deter-

mined plaintiffs' legal challenge *did present* a justiciable controversy. Given the posture of the case at the time it was considered by this Court, it may be fairly concluded that by dismissing plaintiffs' appeal, wherein it was argued that *if* Proposition C funds *were included* in total state revenues a refund *would* be owing to income taxpayers, this Court followed the logic of *Buechner* and took judicial notice that there was no further justiciable claim since the triggering of a refund was neither pleaded nor proved and such refund was not *imminent.* The plaintiffs' appeal sought only advice from this Court based on speculation arising from the justiciable legal claim which had already been determined contrary to their argument.

In neither *Buechner* nor *Goode* was there an allegation or proof that a refund was presently owing income taxpayers stemming from the alleged miscalculation of total state revenues or that the Hancock limits had been exceeded. Hence, this Court properly concluded that claims attacking the *"constitutionality of the refund provision"* were not justiciable. However, in each case this Court determined that certain justiciable issues were presented and entered conclusive orders with respect to the correct manner for calculating revenues under the Hancock Amendment.

Neither *Buechner* nor *Goode* is authority for this Court's order dismissing the instant case on the ground "there is no justiciable controversy, ripe for adjudication." I submit that the Court's citation to *Buechner* is misplaced because plaintiffs in the case at bar have alleged and have offered voluminous proof of the critical facts missing from *Buechner*, *i.e.* that the refund provision *has been* triggered because the revenue and spending limits *have been* exceeded and that the State Treasurer should be enjoined from issuing the refund

---

**2.** On November 2, 1982, the voters of Missouri approved an initiative which, *inter alia*, increased the statewide sales and use tax by one percent for the purpose of providing additional state aid to six-director, urban and metropolitan school districts. Because of its designation on the ballot, the initiative was popularly referred to as "Proposition C." On March 3, 1983, the Governor signed an act declaring that Proposition C revenues would not be counted as part of total state revenues.

checks.[3] Thus, following a plenary hearing and a proper finding of fact[4] to determine if the proof sustains their claim that the limits have been exceeded, plaintiffs' constitutional claims are indeed ripe for adjudication. Insofar as the Court's citation to *Goode* means that the trial court's judgment was incorrect because it excluded *all* sales tax receipts from the calculation of total state revenues, rather than only the Proposition C receipts, the citation is correct. However, the analysis may not end there. This Court under the authority of *Goode* should reverse the trial court's judgment, and remand this cause for evaluation of the copious evidence pertinent to the claims that the revenue and spending limits have been exceeded. The trial court should be ordered to make full findings from the voluminous evidence to determine the percentage, if any, by which such revenue exceeds the Hancock limit. A summary review of the expert testimony and the supporting documentary proof makes clear that such full evaluation of the record should be made and findings entered as to whether the revenue and spending limits have been exceeded. If on remand it is determined the limits have in fact been exceeded, the trial court should address the constitutional challenge and consider the injunctive relief requested.

3. Under the Hancock Amendment plaintiffs had the option to seek the refund presently due and owing or, as they have sought here, to enjoin the refund based upon their equal protection claim.

4. The trial court heard many witnesses and received reams of documents regarding what is includable in total state revenue. However, because the trial court incorrectly excluded all sales tax revenue from its calculation of total state revenue it failed to consider the evidence presented on the inclusion of other items in "total state revenues" and failed to make sufficient findings in the cause. It is the necessity for those findings which warrants remand.