Dear Representative Allen:
This opinion is in response to your questions asking:
 Would like a clarification of Sect. 137.073 of RSMO. 1. Can a county library district exceed its rollback ceiling and 2) if a simple majority or a 66 2/3 vote is required if a district wishes to exceed its rollback ceiling but not exceed its current statutory ceiling?
Section 137.073.6(1) and (2), as enacted by Senate Committee Substitute for Senate Bill No. 234, Eighty-Third General Assembly, First Regular Session (effective January 31, 1985) (hereinafter sometimes referred to as "S.C.S.S.B. 234"), states:
 6. (1) The tax rate ceiling established pursuant to this section shall not be exceeded in the year of the tax rate reduction or thereafter unless a higher tax rate is approved by a vote of the people. Approval of the higher tax rate shall be by at least a majority of votes cast except:
 (a) When a higher tax rate, before reduction, would have required approval by at least two-thirds of the votes cast, any vote to exceed the tax rate ceiling shall require approval by at least two-thirds of the votes cast;
 (b) When a higher tax rate, before reduction, could have been approved by a majority of the votes cast, the maximum tax rate increase that can be approved by a majority after reduction shall be computed as follows: The maximum cumulative percent the original tax rate ceiling can be increased by a majority vote in the future shall be the same percent which the tax rate prior to reduction was exceeded by the maximum tax rate that could be voted by a majority; any increase in the tax rate ceiling beyond that percent shall require approval by at least two-thirds of the votes cast; and
 (c) When a higher tax rate, before reduction, would have required approval of the governing body without approval of voters, the tax rate ceiling may be increased by action of the governing body in years following reduction, by the same percentage the rate could have been increased without approval of the voters before the tax rate was reduced. For this purpose any political subdivision that before general reassessment had eliminated its tax rate shall be deemed to have been levying one cent per one hundred dollars valuation before general reassessment.
 (2) When the voters approve an increase in the tax rate, the increased tax rate becomes the new tax rate ceiling. [Emphasis added.]
Section 137.073.1(3) and (4), as enacted by S.C.S.S.B. 234, define the words "tax rate", "rate", or "rate of levy", and "tax rate ceiling" as follows:
 1. As used in this section, the following terms mean:
. . .
 (3) "Tax rate", "rate", or "rate of levy", singular or plural, includes the tax rate for each purpose of taxation of property a taxing authority is authorized to levy without a vote and any tax rate authorized by election, including bond interest and sinking fund;
 (4) "Tax rate ceiling", a tax rate as reduced by the taxing authority to comply with the provisions of this section or when a court has determined the tax rate reduction. This is the maximum tax rate that may be levied in the year of tax rate reduction and in subsequent years, unless a higher tax rate ceiling is approved by voters of the political subdivision as provided in this section; [Emphasis added.]
The definition of the words "tax rate", "rate", or "rate of levy" quoted above makes clear that such encompasses both operating and debt service levies.
County library districts organized pursuant to Sections182.010 to 182.130, RSMo 1978 and Supp. 1984, are authorized to impose three different types of property tax levies: (1) operating levies of up to twenty-five cents (25¢) per one hundred dollars ($100.00) assessed valuation, imposed under Sections182.010, RSMo 1978, and 182.020, RSMo Supp. 1984; (2) building fund levies of up to twenty cents (20¢) per one hundred dollars ($100.00) assessed valuation, imposed under Section 182.100, RSMo Supp. 1984; and (3) debt service levies sufficient to pay the interest and principal of the indebtedness as it falls due, imposed under Section 182.105.3, RSMo 1978, and Article VI, Section 26(f), Missouri Constitution. The debt service levy requires approval by two-thirds of the voters of the county library district voting thereon when the bonds are authorized. Section 182.105.2, RSMo 1978; Article VI, Sections 26(b) and (c), Missouri Constitution. The operating and building fund levies require only approval by a majority of the voters. Sections182.010, RSMo 1978, and 182.100, RSMo Supp. 1984.
 A. The Debt Service Levy
Article VI, Section 26(f), Missouri Constitution, states:
 Before incurring any indebtedness every county, city, incorporated town or village, school district, or other political corporation or subdivision of the state shall provide for the collection of an annual tax on all taxable tangible property therein sufficient to pay the interest and principal of the indebtedness as they fall due, and to retire the same within twenty years from the date contracted.
Article X, Section 22(a), Missouri Constitution, states in part:
 (a) . . . If the assessed valuation of property as finally equalized, excluding the value of new construction and improvements, increases by a larger percentage than the increase in the general price level from the previous year, the maximum authorized current levy applied thereto in each county or other political subdivision shall be reduced to yield the same gross revenue from existing property, adjusted for changes in the general price level, as could have been collected at the existing authorized levy on the prior assessed value.
 (b) The limitations of this section shall not apply to taxes imposed for the payment of principal and interest on bonds or other evidence of indebtedness or for the payment of assessments on contract obligations in anticipation of which bonds are issued which were authorized prior to the effective date of this section.
Article X, Section 16, Missouri Constitution, states in part: "[T]he repayment of voter approved bonded indebtedness is guaranteed. . . ."
We are confronted with three tax rate reduction rollbacks that may be applicable to county library district debt service levies: (1) the statutory tax rate rollback found in subsection 2 of Section 137.073, as enacted by S.C.S.S.B. 234; (2) the Hancock Amendment tax rate rollback found in Article X, Section 22(a), Missouri Constitution, and section 5 of Section 137.073, as enacted by S.C.S.S.B. 234; and (3) the debt service levy provision found at Article VI, Section 26(f), Missouri Constitution.
In Opinion No. 46, Proffer, 1982, this office concluded the statutory tax rate rollback found in subsection 2 of Section137.073, RSMo, was unconstitutional in violation of Article X, Section 22(a), Missouri Constitution, only to the extent such provides a less restrictive rollback than that provided by the Hancock Amendment rollback. Likewise, the statutory tax rate rollback found in subsection 2 of Section 137.073, as enacted by S.C.S.S.B. 234, violates Article VI, Section 26(f), Missouri Constitution, to the extent such sets a less restrictive debt service levy than that provided by the Constitution. Also, to the extent the statutory tax rate rollback found in subsection 2 of Section 137.073, as enacted by S.C.S.S.B. 234, sets a debt service levy at a rate lower than that required to pay the principal and interest on bonds, such would require an eventual default on such bonds and such violates Article VI, Section26(f), Missouri Constitution. The statutory tax rate rollback found in subsection 2 of Section 137.073, as enacted by S.C.S.S.B. 234, does not apply to county library district debt service levies.
Subsection 5(1) of Section 137.073, as enacted by S.C.S.S.B. 234, implements the tax rate rollback found at Article X, Section 22(a), Missouri Constitution. Subsection 5(2) of Section137.073, as enacted by S.C.S.S.B. 234, requires each political subdivision to calculate its "tax rate" considering the tax rate rollback in the Hancock Amendment, Article X, Section 22(a), Missouri Constitution. As previously stated, Section 137.073(3), as enacted by S.C.S.S.B. 234, defines the term "tax rate" as including debt service levies.
Article X, Section 22(b), Missouri Constitution, provides that Article X, Section 22(a), Missouri Constitution, does not apply to "taxes imposed for the payment of principal and interest on bonds or other evidence of indebtedness"; however, it is unclear whether the words "which were authorized prior to the effective date of this section" qualifies both the "assessments on contract obligations in anticipation of which bonds are issued" language in Article X, Section 22(b), Missouri Constitution, and the "taxes imposed for the payment of principal and interest on bonds or other evidence of indebtedness" languageor whether the "which were authorized prior to the effective date of this section" language qualifies only the "assessments on contract obligations in anticipation of which bonds are issued" language.
Article X, Section 22(b), Missouri Constitution, derives from Article IX, Section 31, Michigan Constitution (the Headlee Amendment). We are unable to locate any Missouri or Michigan authority resolving this ambiguity in Article X, Section 22(b), Missouri Constitution.
It is clear, however, that any tax rate rollback imposing a debt service tax rate less than that provided by Article VI, Section 26(f), Missouri Constitution, could eventually cause a default on bonds. Article X, Section 16, Missouri Constitution, instructs us that the Hancock Amendment guarantees the repayment of voter-approved bonded indebtedness. In other situations where the text of the Hancock Amendment is ambiguous or conflicting, the courts have found Article X, Section 16, Missouri Constitution, controlling. See Dirck v. State, 665 S.W.2d 615
(Mo. banc 1984); Goode v. Bond, 652 S.W.2d 98 (Mo. banc 1983). We believe that Article X, Section 16, Missouri Constitution, resolves the ambiguity in Article X, Section 22(b), Missouri Constitution, and that Article X, Section 22(a), Missouri Constitution, does not apply to debt service levies generated pursuant to Article VI, Section 26(f), Missouri Constitution.
Accordingly, we conclude that the words "including bond interest and sinking fund" in the definition of the words "tax rate", "rate", or "rate of levy" in Section 137.073.1(3), as enacted by S.C.S.S.B. 234, violate Article VI, Section 26(f), Missouri Constitution, as applied to the statutory tax rate rollback found in subsection 2 of Section 137.073, as enacted by S.C.S.S.B. 234, and that such language violates Article X, Section 22(b), Missouri Constitution, as applied to the Hancock Amendment tax rate rollback found at Article X, Section 22(a), Missouri Constitution, and subsection 5 of Section 137.073, as enacted by S.C.S.S.B. 234. The language in Section 137.073, as enacted by S.C.S.S.B. 234, requiring the rollback of debt service levies is void and severable from the remaining portions of Section 137.073, as enacted by S.C.S.S.B. 234, under Section1.140, RSMo 1978.[1]
 B. The Operating and Building Fund Levies
Section 137.073.6(1)(b), as enacted by S.C.S.S.B. 234, provides that tax rate ceilings may be increased as follows:
Suppose that, prior to any tax rate reduction rollback, a county library district has imposed an operating levy pursuant to Sections 182.010, RSMo 1978, and 182.020, RSMo Supp. 1984, of twenty cents (20¢) per one hundred dollars ($100.00) assessed valuation. The maximum county library district operating levy is twenty-five cents (25¢) per one hundred dollars ($100.00) assessed valuation. Section 182.010.1, RSMo 1978. Assume that the tax rate reduction is three cents (3¢) per one hundred dollars ($100.00) assessed valuation, so that the tax rate ceiling after the imposition of the tax rate reduction rollback is seventeen cents (17¢) per one hundred dollars ($100.00) assessed valuation.
Section 137.073.6(1)(b), as enacted by S.C.S.S.B. 234, requires one to subtract the tax rate prior to reduction (20¢ in the example above) from the maximum tax rate prior to reduction (25¢ in the example above), and one is to divide this result (5¢ in the example above) by the maximum tax rate prior to reduction (25¢ in the example above). This ratio (20% in the example above) is the percentage increase in the tax rate ceiling after imposition of the tax rate reduction rollback (17¢ in the example above) that may be made by a simple majority vote.
In the example above the maximum tax rate ceiling that could be established by a simple majority vote would be twenty and four-tenths cents (20.4¢) per one hundred dollars ($100.00) assessed valuation. Any increase in the tax rate ceiling from this twenty and four-tenths cents (20.4¢) per one hundred dollars ($100.00) assessed valuation up to the twenty-five cents (25¢) per one hundred dollars ($100.00) assessed valuation limitation established in Section 182.010.1, RSMo 1978, must be approved by two-thirds of the voters under Section137.073.6(1)(b), as enacted by S.C.S.S.B. 234.[2]
By way of another example, suppose that a county library district building fund levy is at twenty cents (20¢) per one hundred dollars ($100.00) assessed valuation prior to tax rate reduction. Twenty cents (20¢) per one hundred dollars ($100.00) assessed valuation is the statutory maximum county library district building fund levy. Section 182.100.1, RSMo Supp. 1984. After the tax rate rollback is imposed, the tax rate ceiling is eighteen cents (18¢) per one hundred dollars ($100.00) assessed valuation.
Under Section 137.073.6(1)(b), as enacted by S.C.S.S.B. 234, any increase in the tax rate ceiling after the tax rate reduction is imposed (18¢ in the example above) would require a two-thirds majority approval by the voters. This is because the tax rate prior to reduction equals the maximum statutory tax rate prior to reduction.
CONCLUSION
It is the opinion of this office that county library district debt service levies imposed pursuant to Section182.105.3, RSMo 1978, and Article VI, Section 26(f), Missouri Constitution, are not subject to any tax rate reduction rollback under Section 137.073, as enacted by Senate Committee Substitute for Senate Bill No. 234, Eighty-Third General Assembly, First Regular Session. County library district operating levies, imposed pursuant to Sections 182.010, RSMo 1978, and 182.020, RSMo Supp. 1984, and county library district building fund levies, imposed pursuant to Section 182.100, RSMo Supp. 1984, may be increased by majority vote above the tax rate ceiling established in Section 137.073.2 or .5, as enacted by Senate Committee Substitute for Senate Bill No. 234, Eighty-Third General Assembly, First Regular Session, according to the formula found in Section 137.073.6(1)(b), as enacted by Senate Committee Substitute for Senate Bill No. 234, Eighty-Third General Assembly, First Regular Session; thereafter, all subsequent tax rate ceiling increases must be approved by two-thirds of the voters.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General
[1] The following should be helpful in establishing a debt service levy:
I. Property Tax Revenue Needed for Debt Service:
 A. Enter the amount needed to pay general obligation debt service requirements (principal and interest payments) in the year being planned for and anticipated fees charged by transfer or paying agents and the like . . . . . . . . . . . . $
 B. Enter the costs of collection of the property tax levied for debt service, e.g., collector fees, and anticipated uncollected taxes. . . . . .
 C. Enter a reasonable amount of reserve for debt service requirements. Because of the difficulty in estimating the costs of collection and anticipated uncollected taxes, some reserve should be provided to avoid a default on the debt. . ____
D. Subtotal . . . . . . . . . . . . . . . . . . . . . . .
 E. Subtract from the Subtotal (Line I.D.) any anticipated beginning surplus remaining after the prior year's debt service requirements have been met. . . . . . . . . . . . . . . . . . . . . . (____)
F. Property tax revenue needed for debt service . . . .
II. Debt Service Levy:
 A. Divide the property tax revenue needed for debt service (Line I.F.) by the total year's assessed valuation of the political subdivision. Next multiply the result by one hundred (100), so that the rate will be expressed in cents per one hundred dollars ($100.00) assessed valuation. (Line I.F. ÷ total assessed valuation X 100 = tax rate.) . . . . . . . . . . . . . . . . . . . . . . . . ____
[2] The following should be helpful in establishing maximum tax rate ceilings:
I. Simple Majority Tax Rate Ceiling:
 A. Enter the statutory maximum tax rate prior to reduction . . . . . . . . . . . . . . . . . . . .
B. Enter the tax rate prior to reduction . . . .
 C. Subtract from this maximum (Line I.A.) the tax rate prior to reduction (Line I.B.) . . . . . . .
 D. Enter the statutory maximum tax rate prior to reduction (Line I.A.) . . . . . . . . . . . . . .
 E. Divide the subtotal (Line I.C.) by the statutory maximum tax rate prior to reduction (Line I.D.) . . . . . . . . . . . . . . . . . . .
F. Add 1 to this ratio . . . . . . . . . . . . .
G. Enter the tax rate after reduction . . . . .
 H. Multiply the ratio (Line I.F.) by the tax rate after reduction (Line I.G.) . . . . . . . . . . .
II. Two-thirds Majority Tax Rate Ceiling:
 A. Increasing the tax rate ceiling above the simple majority tax rate ceiling (Line I.H.) and up to the statutory maximum tax rate prior to reduction (Line I.A. D.) requires approval by two-thirds of the voters voting thereon.